6r 477
117 740

## Ebenezer Eaton Kittridge *v.* Eugene Landry.

Where there was error on the part of the vendor in delivering, and on the part of the vendee in receiving the possession of property sold, such possession cannot serve as a basis for the prescription of ten years, as where lands resold by a purchaser from the United States, having been erroneously located, the possession in conformity thereto was necessarily erroneous.

Appeal from the District Court of Assumption, *Nicholls,* J.

*Ilsley* and *Connely*, for the appellant.

*Bodin* and *M. Taylor*, contra.

GARLAND, J. This case has been already before us, and in the opinion given in April, 1842, remanding it for a new trial, the pleadings, and much of the evidence, are fully stated. 2 Robinson, 72.

The plaintiff claims the land as being a portion of that purchased by André Le Blanc, in the year 1822, (mentioned in the first opinion, in the case of *Kittridge* v. *Breaud*, 2 Robinson, 40,) and derived from him, Le Blanc, by several mesne conveyances, his immediate vendor being Lazare Hébert. C. Mollère, under whom the defendant holds, purchased from the United States in August, 1824, eighty *arpens* of land in the rear of his front tract, which, in the month of January, 1826, he sold to the defendant, who immediately took actual possession thereof.

Sometime after the land was purchased by Mollère, at his request a survey was made by Grinage, a deputy Surveyor of the United States, who located it on the upper side and adjoining to the land of André Le Blanc, and ran the lines parallel with those of Bonnet, the Surveyor, who had laid off Le Blanc's land, in May, 1823. This survey was approved by Turner, the principal deputy Surveyor for the district, but the date of the approval is not stated. In the year 1829, or 1830, a general survey of the township was made, and the lines run by Bonnet and Grinage were disregarded, and the boundaries of the different claims changed ; yet each individual obtained the quantity he had purchased. The house and principal improvements of the defendant were, by this last survey, thrown upon the land in controversy, and beyond the line he claims. In April, 1833, the defendant, Le Blanc, and others, entered into an agreement before a Notary, in which they stipulated, that, as among themselves, they would be bound by and adhere to the line as established by Bonnet and Grinage. All parties remained in possession until May, 1836, when Le Blanc and wife, and Hébert, sold to the plaintiff. In the act of sale from the latter vendor it is agreed, that if any of the buildings of the defendant shall be found on the land sold, he shall have permission to take them away. About this time a survey was made of the tract of land sold by Le Blanc and Hébert to the plaintiff,

and the Surveyor ran the lines as now contended for by the latter, which showed that the defendant was below the line fixed by the United States Surveyors, of which it appears he was informed. In January, 1837, the plaintiff took possession of the property purchased by him. Shortly after, the defendant requested a neighbor to call on the plaintiff, and to endeavor to get him to rent him (defendant) the land in controversy. The plaintiff consented, and soon afterwards, meeting the defendant in company with the witness, it was verbally agreed that the defendant should keep the land, at the usual rent for cleared land in that part of the country. The defendant also moved his buildings and improvements from the land, and put them on another place. He kept possession up to the time when this suit was commenced, acknowledging to different persons, that he had rented the land from the plaintiff. But the contract of lease was never reduced to writing.; nor has it been shown, that any rent was ever paid. It is proved, that the defendant showed the line run by the last Surveyors, as that between him and the plaintiff, and that he only cleared land up to it after plaintiff took possession. But, sometime before the commencement of this suit, the defendant claimed the land he was in possession of, as his own, and forbade the plaintiff's overseer from cutting fire-wood or timber on the premises.

At the time of the trial it was agreed, that the question of title only should be investigated, reserving those in relation to improvements, damages, &c. There was a verdict in favor of the defendant for the land, and one in favor of the plaintiff against Hébert, his vendor, for $3000. The latter applied for a new trial, which was granted as to him; but the plaintiff made no such application, and judgment was rendered against him, and he has appealed. The cause was subsequently tried as between the plaintiff and Hébert; and, at the spring term, 1843, of the District Court, a verdict of $1500 was given against the latter, who again obtained a new trial. At the October term, 1843, another trial was had, when a verdict was given in his favor; and, as the judgment now stands, the plaintiff loses the land by that in favor of the defendant, as well as his recourse on his warrantor. From this judgment he has also appealed.

The counsel for the defendant has again argued nearly all the

points the case originally presented, and insists very strongly on the binding effect of the act passed before the Notary, Materre, in April, 1833, although it is not recorded. He has attempted to prove that the plaintiff is the *ayant cause*, or assignee of André Le Blanc, and that, as to him, there is no necessity for recording the act. The real facts of the case seem to have escaped the attention of the counsel ; for the record shows, that André Le Blanc sold the land in controversy, in October, 1822, to Guillaume Mollère, who, in November, 1827, sold it to Joseph Campo ; he, in July, 1828, sold it to Lazare Hébert, who, in May, 1836, sold to the plaintiff. Neither G. Mollère, Campo, nor Hébert, are parties to the act passed in April, 1833, and it is clear, that André Le Blanc could not bind them in relation to a piece of land he had sold more than ten years previously. It is, therefore, unnecessary for us to go again into the question of the recording of that act, as it is too clear to admit of controversy, that the plaintiff is not bound by it. The fact is, the plaintiff did not purchase any of the land he claims, of André Le Blanc. The front tract was bought of Madame Le Blanc, separated in property from her husband, and owning the land in her own right.

The remaining question in the case is the plea of prescription. We have seen, that in the month of April, 1825, Celestin Mollère had the land surveyed by Grinage. There is no date to the approval of this survey, and it was not made in conformity to the acts of Congress, as it does not place the back concession in the rear of the front tract, as we have said must be done in every case where it is practicable. Celestin Mollère purchased the land claimed by the defendant, from the United States, before any survey was made. He had, therefore, no location by metes and bounds, until the survey in April, 1825, by Grinage, which, although approved at some unknown period, by the principal deputy Surveyor, was, in 1829, or 1830, entirely disregarded by the Surveyor General and other public officers, when a location was made of the land owned by the defendant, from which it does not appear that he has ever appealed to the General Land Office or to Congress. The defendant has submitted to it, and whenever he shall apply for a patent for his land, we have no doubt that it will be issued in conformity with the survey made in 1829, and

not with that made by Grinage, in 1825. The latter location being erroneous, and the possession in conformity to it consequently so, it cannot be the basis for the prescription of ten years. In the case of *Babineau* v. *Cormier*, 1 Mart. N. S. 456, this court said, if there be error on the part of the vendor in delivering the property sold, and error on the part of the vendee in taking possession, the latter cannot hold by the prescription of ten years. The same principle was again recognized in the case of *Broussard* v. *Duhamel*, 3 Mart. N. S. 16. See also, Pothier, Traité de la Possession, chap. 4, No. 40. Troplong de la Prescription, No. 254. In 1829, when the public surveys were made, the defendant knew that there was an error as to the boundaries within which he possessed, and that the title, which he held from the United States, was not complete and legal. For four years he submitted to the change made in the lines; and he has not, to this day, so far as we are informed, complained of the action of the officers of the United States. Since the plaintiff purchased the land from Hébert, the defendant has, on different occasions and in various modes, acknowledged his title; the strongest evidence of which is, the fact of agreeing to rent the land, and the removing of his buildings, which it was stipulated in the act of sale that he should do. These facts might possibly amount to a tacit renunciation of an acquired prescription, as they are calculated to raise a presumption of the relinquishment of the right acquired by it; but it is not necessary to decide this question, as we do not think the prescription was acquired when the suit was commenced. Civil Code, art. 3424.

On a full examination of the case, we are of opinion, that the court and jury erred in giving a judgment and verdict for the defendant, and we must reverse and annul them.

It is, therefore, ordered that the judgment in favor of the defendant be annulled and reversed, and that the plaintiff, Kittridge, recover of the defendant, Landry, the land in controversy, to wit, twenty-one and fifty-nine hundredths superficial acres; and it is further ordered, that this cause be remanded to the District Court, for the purpose of being proceeded in and tried according to law, in relation to the improvements, damages and other questions, in conformity with the agreement of the parties; the defendant pay

ing the costs of this appeal, and those in the District Court up to the time of filing this decree ; such as may accrue subsequently to abide the final decision.