KELLAR
*v.*
MERCHANTS'
INSURANCE Co.

---

## SAMUEL PACKWOOD *v.* J. L. WHITE et al.

Where the parties had agreed upon a compromise, a stipulation of which was, that the defendant should pay the plaintiff ten thousand dollars in cash, and the defendant having complied with the other stipulations, expressed his inability to pay that sum in cash, but offered five thousand dollars in lieu thereof, which amount was placed in the hands of an attorney to be paid if the offer was accepted, the plaintiff having taken the same under the circumstances without any objection, will be considered as having accepted the offer.

Parties are at liberty to admit parol evidence of a contract for land, and if they do so, the court will give effect to the same.

When, as a part of a compromise, a judgment is confessed, the conditions of the compromise may be shown by any legal evidence; and such evidence will not be considered as controlling or limiting the effect of the judgment.

APPEAL from the First District Court of New Orleans, *Larue*, J. *A. Hennen*, for plaintiff. *L. Janin*, for defendants. The judgment of the court, (*Preston*, J., absent,) was pronounced by

ROST, J. On the 23d of December, 1850, the defendants confessed judgment in favor of the plaintiff, for fifty-one thousand eight hundred and four dollars and ten cents, besides interest, on certain promissory notes given for the first installments of the price of the Myrtle Grove Plantation, which they had purchased from him. On the same day a writ of *fi. fa.* issued, under which the crop of sugar was seized, day by day, as it was gathered, and shipped by the sheriff, for sale, to *Messrs. W.* and *J. Montgomery*, the firm agreed upon for that purpose, between the plaintiff and defendants. This writ was returned after the crop had been secured, and on the 11th of February following, an *alias fi. fa.* issued, on which the plantation and slaves were seized.

To arrest the sale under this writ, the plaintiff being a non-resident of the State, the defendants filed a bill in chancery in the Circuit Court of the United States, alleging an agreement of the plaintiff to give them three years time to pay the debt, on certain conditions, with which they have strictly complied; and further, that the judgment confessed by them, was confessed for the only purpose of securing the execution of this agreement, by preventing the seizure of the crops under execution, at the suit of other judgment creditors.

PACKWOOD
v.
WHITE.

The plaintiff then applied to the State court from which the writ had issued, to arrest the proceedings in chancery, and after much litigation, the parties entered into an agreement, under which the bill in chancery was dismissed, and all the issues made in the Federal Court were brought before the State court for adjudication. Those issues form the subject of the present controversy.

The district judge recognized the existence of the agreement set up by the defendants, and after crediting the execution with the net proceeds of the last crop shown to have been received by the plaintiff, he enjoined the sale of the plantation and slaves. The case is before us on the appeal of the plaintiff.

It is clearly proved, that the plaintiff originally agreed to stay proceedings for three years, from the 7th of March, 1850, on the following conditions: 1st. That the defendants should give him satisfactory security for the delivery of the crops during those three years. 2d. That said crops should be consigned for sale to Messrs. W. and J. Montgomery, or such other factor as he might select, and that the proceeds, after paying expenses, should be exclusively applied to the payment of his debt. 3d. That the defendants should pay him the sum of ten thousand dollars.

It is further shown, that the plaintiff had entire confidence in the management of the defendants, and that as long as he received the crops, he preferred to leave the plantation under their control, than to sell it for the payment of his claim.

The defendants furnished satisfactory security for the forthcoming of the crops, and made arrangements with Messrs. W. and J. Montgomery, who agreed to act as their factors; but they were unable to comply with their promise to pay ten thousand dollars, and placed five thousand dollars in the hands of Mr. Benjamin, the common friend of the parties, to be offered to Mr. Packwood, in lieu of the ten thousand dollars promised; this being the largest amount they could raise. When this sum was offered to the plaintiff, he first objected to the change in the terms; appeared to think himself unsafe with so small a payment; and expressed regret at having subrogated Mr. Milbank, a creditor of the defendants, to a part of the vendor's privilege and mortgage, because it exposed him to have the plantation seized and sold during his absence at the north. To obviate this difficulty, at the suggestion of Mr. Benjamin, an agreement was procured from Mr. Milbank, by which he bound himself not to procede on his mortgage for one year, and for such further time as would be necessary to give the plaintiff reasonable notice that he meant to enforce it. After this agreement had been obtained and delivered to the plaintiff, he and the defendants met together at Mr. Benjamin's office, and Mr. Benjamin paid over to the plaintiff the five thousand dollars in his hands. The plaintiff then considering the arrangement completed, told the defendants, "we must settle with Mr. Benjamin for his fee, and we must divide it." Mr. Benjamin declined receiving any fee. Had this witness not declined to testify, so far as he had been consulted as counsel, his testimony would have been much more explicit; but what he has stated, is too transparent to conceal the facts which he was in duty bound to withhold.

It was said in argument, that the receipt given by the plaintiff was simply on account of the amount due him for the price of the plantation, and had no reference to any agreement. Such a reference was unnecessary. Mr. Benjamin was instructed to offer the five thousand dollars to him, in place of the ten thousand dollars originally promised, and as he received it without any reserva-

PACKWOOD<br>v.<br>WHITE

tion, after obtaining a stay of proceedings from *Milbank,* he must be held to have ratified the change in the original agreement proposed by the defendants through *Mr. Benjamin.*

The testimony of *Mr. Milbank* is conclusive, that the only consideration moving him to grant a stay of proceedings, was the agreement of *Mr. Packwood* not to procede under his mortgage for three years, and it is clear that the pretensions of the plaintiff, if sustained, would operate a surprise and perhaps a serious injury to him.

It is urged by the plaintiff's counsel, that the agreement relied on, should be shown by at least one witness and corroborating circumstances. We think it is proved by the concurrent testimony of many witnesses, by the acts and declarations of the plaintiff himself, and by the fact, that as long as it suited him to do so, he availed himself to the utmost of every stipulation which it contained in his favor. His offer to divide the fee, which he considered due to *Mr. Benjamin,* for having completed the arrangement; his statement to *Mr. Staunton,* the security for the forthcoming of the crops, that he was satisfied he would now get them; and his expressions of unmingled satisfaction, to this witness and others, for the amicable arrangement he had made with the defendants, can leave no doubt of its existence in unprejudiced minds.

It is equally clear from the evidence, that the judgment under which the plantation and slaves have been seized, was confessed by the defendants, for the sole purpose of securing the execution of this agreement, by enabling the plaintiff to keep in the hands of the sheriff, an execution which would give him a privilege upon the crop as it was gradually separated from the soil, and thus protect him from seizure by other judgment creditors of the defendants. The impressions of *Mr. Bradford* are clear, distinct and unequivocal, that this was the only object the parties had in view, and the circumstance that he consented to act as the legal adviser of both in obtaining the judgment, would alone satisfy us, that there was no contest between them, and that the judgment was not intended to change their previous position towards each other.

The defendants would never have suffered execution to issue, as it did on the day the judgment was rendered, if the object of it had been to enforce the sale of the plantation and slaves. Nothing of the kind was attempted. The sheriff seized the crop under it, daily as it was made, but instead of selling it, he was directed by the plaintiff to send it to *Messrs. W.* and *J. Montgomery* for sale, under the agreement, and it was so sent and sold; nay, the plaintiff executed the agreement beyond his promise, by becoming the surety of the defendants for the reimbursement of the advances which *Messrs. W.* and *J. Montgomery* agreed to make to them.

The plaintiff having had the full benefit of the agreement, cannot now be permitted to repudiate it. Whether it be advantageous to the defendants, or the reverse, is a matter for their consideration. It is said that they are insolvent, and that the agreement is no longer binding on that ground. But, as the plaintiff told one of the witnesses that he never expected they would be able to comply with their contract, it was the purchase of the plantation which made them insolvent, and their situation at the time the agreement was entered into, was the same as it is now.

It is urged in the supplemental brief of the plaintiff's counsel, that the agreement alleged is a variation of the original contract of sale; that it should, as the sale itself, be in writing, and that no parol evidence of it ought to be received.

This question has been fully considered in the case of *Lockett* v. *Mrs. Toby,* 7th Ann., on the application for a re-hearing, and after mature deliberation, we have adhered to the settled jurisprudence of the State, that the parties are at liberty to admit parol evidence of a contract for land, and that, if they do, we will give it effect.

We have been warned of the danger of attempting to control or limit the effect of a judgment by parol evidence ; but this is nothing more than a judgment confessed, forming part of a compromise, the conditions of which may be shown by any legal evidence to which the parties do not object. *Union Bank* v. *Marin,* 3d Ann. 34. *Delabigarre* v. *Municipality Number Two,* 3d Ann. 237. We are of opinion that the judgment must be affirmed.

Affirmed, with costs.