### ALPHONSE DORVIN *v.* AIMÉE WILTZ.

A defendant, in an action for the partition of community property, who demands in reconvention a judgment for one-half of the charges incurred in supporting the slaves in controversy, will be precluded from asserting title to plaintiffs' interest in the property, as a " *dation en paiement.*"

Parol evidence of plaintiff's admission that he promised to abandon the slaves in question to the defendant, although received without opposition, will not have the effect to entitle defendant to assert such title.

When a judgment of separation from bed and board is rendered, the husband ceases to be the head of the community, and one undivided half of the property thereof vests immediately in each of the spouses, who thereby become joint owners ; the wife having in this case continued to posses *nomine communi*, is accountable for the fruits of the property.

A claim, by the wife, for expenditures prior to the dissolution of the community, is inadmissible. It being neither alledged or proved that those expenditures were made with her separate or paraphernal funds.

The Supreme Court will give effect to evidence which would have been inadmissible under the pleadings, but to which no ojection was made. BUCHANAN, J., dissenting.

The income of the separate estate of one of the spouses belongs to the community. C. C. 2371, BUCHANAN, J., dissenting.

A verbal quit claim of slaves, amounting to an informal settlement of a community, will avail as a *dation en paiement*, notwithstanding it was not reduced to writing. BUCHANAN, J , dissenting.

Where the wife bore all the charges of the support of the family and the education of the children, she is entitled to claim one-half of the amount from the husband, on a settlement of the community. BUCHANAN, J., dissenting.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *St. Paul & Bouny*, for plaintiff. *Magioni*, for defendant and appellant.

VOORHIES, J., (BUCHANAN, J., dissenting.) This is an action for the partition of property belonging to the community, which formerly existed between the parties.

The defendant claims the reversal of the judgment rendered against her on several grounds.

"First. The evidence shows that plaintiff had made a *dation en paiement*

in his half interest in the slaves to the defendant, and he is bound by the evidence by which it is sought to be sustained."

The only question which this ground presents is, whether the plaintiff has been divested of his title to the undivided half of the slaves claimed as community property. We think not. A demand in reconvention is the only plea interposed by the defendant. She alleges in substance, that she was married to the plaintiff in October, 1825, with whom she had two children, *Theophile* and *Emma Dorvin*, the former being born on the 30th of October, 1826, and the latter on the 28th of February, 1830; that in June, 1831, she and her children were abandoned by him, without any just cause; that on the eleventh of July, eighteen hundred and thirty-eight, she obtained a judgment against him for separation from bed and board, on the ground of abandonment, in which the right was reserved to establish their respective claims against the community; that the only property of the community then, consisted of the negro woman named *Anaïs* and her two children, *Claire* and *Cecile*, the former aged about three years and the latter about twenty months; that the other two children of *Anaïs*, *François* and *Carmelite*, born subsequently, are now aged, one about twelve and the other thirteen years; that *Anaïs* had nine children, five of whom died quite young; that she had to defray the expenses incident to the birth, burial, &c., of the children of *Anaïs*, which amounted to upwards of $150, as a charge against the community; that she paid $103 for parish and municipal taxes on the slaves, from the year 1842 to that of 1850, inclusive, which was due by the community; that the plaintiff is bound to her for one-half of the expenses for the clothing and support of the slaves of the community, at the average rate of $4 per month, to be reckoned as follows, to wit, *Anaïs* from June, 1831, *Claire* from July, 1834, *Cecile* from September, 1835, *François* from February, 1838, and *Carmelite* from February, 1839, until the final settlement of the community; that when she was abandoned by the plaintiff, her daughter *Emma*, an infant, was lying dangerously ill, and continued to remain so upwards of twenty months; that the plaintiff, having made no provision either for her support or that of her children and their education, she was compelled to labor in order to procure the necessary means for that purpose; that *Emma* and *Theophile Dorvin*, both died of lingering diseases of many months, the former on the 11th of April, 1849, and the latter on the 30th of May, 1851; that the plaintiff, although legally and morally bound, never paid or contributed any thing for the support and education of his children; that he is bound for the reimbursement of the expenses incurred by her for that purpose, at an average rate of $20 per month for each of them, from June, 1831, to the period of their respective deaths, and also for the sum of $223 50, their funeral expenses; and that she is entitled to a privilege for the reimbursement of her claims, which greatly exceed the interest of the plaintiff in said community property. She concludes, by praying for judgment against the plaintiff, *with privilege on his half interest in the community property*, for the reimbursement of the sums thus claimed by her, &c.

In answer to her reconventional demand, the plaintiff pleaded a general denial, and specially, that the claims set up by her was compensated by the hire of the slaves which remained in her possession; and also claimed as a charge against the community, the sum of $2,790 74, alleged to have been inherited by him from the successions of his father and grandfather, and converted to the use of said community.

We think it is clear, under these pleadings, that the defendant is precluded from asserting title to the plaintiffs' interest in the property as a *dation en paiement.* Parol evidence of the plaintiffs' admission that he promised to abandon the slaves in question to the defendant, although received without objection, is not entitled, in our opinion, to the effect contended for by the appellant's counsel. The cases on which he relies to sustain his position, do not appear to us to be analogous to the present.

"Second. The court erred in allowing wages for *Anaïs* from the 11th of July, 1838, date of separation, and for the four children from their fifteenth year, because wages should have been allowed only from the date of the institution of the present suit."

We do not think the judgment is erroneous in this respect. The plaintiff ceased, by the effect of the judgment of separation from bed and board, to be the master and head of the community, and one undivided half of the property thereof vested immediately in each of the spouses, who thereby became joint owners. The defendant having continued to possess *nomine communi,* was clearly accountable for the fruits of the property, more especially as she claimed in reconvention such charges as those sought to be recovered by her.

" Third. The court erred in deciding that the services of slave children to the age of fifteen years compensated for the expenses and trouble of raising them. Because there are no proofs and facts which can be taken as the basis for the foundation of such a rule; and because, on a separate examination of the pleadings, the evidence, and a decision of the late Supreme Court, the very reverse of the proposition will be made evident."

The only question which this ground of defence presents, is one of fact, and, as is usual in such cases, generally founded on speculative opinions. It does not appear to us from the evidence, that the Judge erred to the prejudice of the defendant. Neither do we understand that his decision establishes any rule of compensation in regard to the raising of the children of slaves, as urged by the defendant's counsel. His conclusion that the defendant would be compensated for the trouble and expense, by charging her with the hire of the slaves only from their fifteenth year, appears to us to be fully sustained by the evidence.

"Fourth. The court erred in disallowing under the above erroneous principle, the third item of defendant's claim, being for the food, clothing, &c., of the four children and of *Anais* herself, because the claim was admitted by the pleadings to be correct, and was fully sustained both by defendant's and plaintiff's evidence."

We do not think that the plaintiff's answer to the demand in reconvention contains any such admission. In adjusting the claim for the hire of the slaves, we infer from the evidence that the Judge must have taken this claim into consideration.

" Fifth. The court erred in not allowing for the expenses of rearing *Theophile* and *Emma,* from 1831, date of the abandonment, instead of the 11th of July, 1838, date of dissolution of the marriage; because plaintiff's plea in compensation admitted their correctness, and because he is as much bound by law for the expenses incurred prior, as for those incurred subsequent to the separation from bed and board; and if not legally, then he is by a natural obligation."

We do not think, as already observed, that the plaintiff's answer contains

any such admission. The defendant's claim for expenditures prior to the dissolution of the community, is clearly inadmissible. It is neither alleged nor shown by her, that those expenditures were defrayed with her separate or paraphernal funds. C. C. 2371.

The plaintiff has prayed for an amendment of the judgment in his favor, by allowing him the amount of his alleged inheritance as a claim against the community. We concur in the opinion of the Judge *a quo*, that the evidence is insufficient to show that any part of it was ever brought into the community. Nor is it even shown by him that the notes which he received as his share in those estates, have ever been paid or any part of their proceeds applied to the purchase of *Anaïs*, as alleged by him.

It is urged, that the affirmance of the judgment will prejudice the appellant, by compelling her, in the event of becoming the purchaser of the property, to deposit the purchase money into court. We do not understand that such will be the effect of the judgment. Either party, in becoming the purchaser of the property, will have the right to retain in his or her hands, the portion of the price coming to him or her, the defendant to retain first the amount awarded in her favor as a creditor of the community by this judgment.

It is therefore ordered and decreed, that the judgment of the court below be affirmed, with costs.

BUCHANAN, J., (dissenting.) The plaintiff brought suit on the 19th January, 1852, for the settlement of a community of acquets, which was dissolved by a judgment of separation of bed and board, rendered on the 11th July, 1838, or thirteen years and six months previous to the institution of this action.

The following facts were established by evidence, received without objection or the reservation of any bill of exceptions on the trial of the cause in the District Court. Plaintiff and defendant were married in New Orleans in the year 1825, of which marriage there was issue two children, a son, born in 1826, and a daughter, born in 1830. In 1831, plaintiff abandoned his wife and his children, without any allegation or pretext of a cause, and lived with a woman who had been his mother's slave; from the moment of his abandonment never seeing his family nor contributing anything whatever to their support. The whole charge of supporting herself and children devolved upon the defendant, who had no resources save her labor and that of a slave girl *Anaïs*, purchased in 1828, for the sum of three hundred and fifty dollars cash, and which had been left with her by plaintiff, when he abandoned her. In 1837 defendant sued plaintiff for a separation of bed and board, on the ground of abandonment.

On July 14th, 1838, judgment was rendered in said suit, decreeing a separation of bed and board between the parties : that the plaintiff (defendant herein) recover of the defendant (plaintiff herein) twenty-five dollars monthly, from the 25th July, 1837, to the date of judgment, as alimony, with costs, the court reserving to each party the right of establishing their rights in the community property.

Shortly after this judgment was pronounced, a brother of defendant went to plaintiff on her behalf, and told him that he was going to proceed against him, and sell *Anaïs* and her two children, *Claire*, then aged three years, and *Cecile*, aged two months, (being the whole property of the community at the date of the judgment,) to effect a partition of the community. Plaintiff told him not to do so; that he had no idea of ever making any claim to those slaves; that

he wanted to leave them to his wife and children. This interview terminated with a mutual understanding that plaintiff should make an act before a notary to that effect; but defendant's brother was never able to see plaintiff afterwards to consummate this settlement, plaintiff having removed to the parish of St. Charles.

The plaintiff often told *Mr. Schexnaider* that he had abandoned all claims in the slaves to the defendant, because she had raised the children.

After this defendant continued to support plaintiff's two children until their death, which occurred, that of the daughter in 1849, and that of the son in 1851. She paid the expenses of their sickness and burial. The plaintiff never came near them, nor incurred the slightest expense on their account. The institution of this suit was the first indication of any desire on his part to disturb the arrangements proved by the witnesses, *Wiltz and Schexnaider*, or to consider the settlement of the community as an open question. In the meantime the slave *Anaïs* had given birth to two more children, *Carmelite* and *François*, who are living; and to five others, who are dead. In his petition plaintiff claims that the slave *Anaïs* and her children, *Claire, Cecile, Carmelite* and *François*, be inventoried as property of the community, and a partition made of the same between himself and the defendant.

The first position assumed in the argument of the counsel for defendant in this court is, that from the evidence it appears that plaintiff has made to defendant a *dation en paiement* of his half interest in the slaves.

The opinion of the majority of the court holds defendant to be estopped from asserting title to the slaves in herself, as resulting from acts and declarations of plaintiff given in evidence, because such an assertion of title is inconsistent with her pleadings.

Even were the question of practice at this day an open one, I should doubt much the right of the court to raise a question of estoppel as applied to evidence in the record, received without opposition in the court below, and against which no argument is offered in this court. Both of these features distinguish the present question. The evidence upon which this part of the defendant's case rests was so far from being opposed by plaintiff in the District Court, that an important portion of it (the testimony of *Schexnaider*) is the subject of an admission made in the note of evidence on trial. And although defendant's brief, in which this point is elaborated, was on the files of this court before plaintiff's brief was filed, the counsel of plaintiff has urged no objection to it, on the score of inconsistency with the pleadings. I can understand that when some great principle of morality is offended, or some palpable violation of law shown by evidence received without opposition and without comment, the court will, *proprio motu*, dismiss from its consideration a subject tainted with such radical vices. But it is no part of the duty of a court to originate purely technical objections. Least of all am I disposed to do so in aid of a claim which to me appears both stale and inequitable.

The general principle, sanctioned by many decisions, is that the Supreme Court will give effect to evidence which would have been inadmissible under the pleadings, but to the reception of which no opposition was made in the court of the first instance. "It is a well settled rule," says Judge Simon, in delivering the opinion of the court in *Powell* v. *Aiken & Gwinn*, 18 L. R. 328, "that a party who, without opposition, suffers evidence to be adduced, contrary to or beyond the allegations contained in the pleadings, is bound by its effect."

. And the same principle is reiterated with approbation in the case of *Guyarré* v. *Tunnard*, 9 An. 254. A leading case upon this point is *Bryan and wife* v. *Moore's heirs*, 11 M. 26, where plaintiff claimed as heir of her husband, but recovered upon another title, upon proof received without opposition, the court observing: "the mistake in the allegations may be waived or cured by the evidence in the case." 9 M. R. 317; 6 N. S. 86; 1 L. R. 301.*

The doctrine is no less well settled, that a party is bound by parol proof of a title to real estate or slaves, in case he has suffered such proof to be given without objection to its admissibility. 1 N. S. 459; 4 L. R. 22.†

Upon this well established rule of practice, I am of opinion that we would be bound to give effect to the evidence of a quit claim by plaintiff in favor of defendant, of his half interest in the slaves *Anaïs* and her children, even if palpably inconsistent with her pleadings. But I do not find such inconsistency. It is true that there is an admission in defendant's answer that the said slaves belong to the community. But the whole of this answer should be taken together. It is far from acknowledging that plaintiff has anything to recover from the community. It is a demand in reconvention, in which, after stating her charges against the community in detail, the defendant avers that "the pretensions set up by the said *Dorvin* to deprive this respondent of his half of the community property are unworthy of being listened to, but ought, on the contrary, to be frowned down by this honorable court, for said plaintiff knows full well that the charges and expenses, both at the time of the separation from bed and board and up to this period, for raising his children and maintaining the slaves far exceed his half interest in said community property."

And again: "Further answering, says, that the half interest which plaintiff *pretends* in said slaves as property of the community is bound for all the aforesaid expenses which she has incurred, both for the slaves and the plaintiff's children, and that said charges far exceed the interest of plaintiff in the slaves above mentioned, and that she has privilege in said slaves for all the expenses aforesaid."

These allegations are in entire harmony with evidence that plaintiff made an informal settlement of the community immediately after its dissolution, in which he relinquished his half interest in *Anaïs* and her two infant children (which interest is proved to have been only worth at that time four hundred dollars) to the defendant, in discharge of a balance justly due by him upon such settlement.

It must not be forgotten that he had been living seven years separate from his family, in the country, where the expenses of living are less than in town, having a good trade (that of carpenter) by which he may be reasonably supposed to have made something more than his expenses, and that the income of his separate estate (consisting of a mortgage of two thousand dollars, undoubtedly bearing interest) also belonged to the community. C. C. 2371. It is not at all improbable that the supposed *dation en paiement* was advantageous to the plaintiff.

Upon this evidence plaintiff should go out of court. After thirteen years he should not be allowed to disturb this settlement, however informal. In the

---

* See case of *Webb* v. *Deeson*, decided Feb. 25, 1855, (Op. Bk., 26, 179,) where the court of the first district allowed evidence, against and beyond the pleadings, for the purpose of justice, and this court held that the evidence was properly admitted. See bills of exception in record of that case.

† *Lockett* v. *Toby*, decided in May, 1851, and in January, 1852, (Op Bk., 21, p. 192, and 22, p. 28,) [10 Ann. Rep. 713,] where parol title to real estate, received in the absence of the party against whom it was offered, was held to conclude him.

case of *Hermann* v. *Theurer*, we refused to allow an inventory of the community to be contested after *eight* years of silence, although the wife was not present at the inventory, neither had it been followed by a partition. The party condemned by a judgment of separation and of divorce in that case, as in the present, sued for the settlement of the community many years after its dissolution, but was held to be concluded. Acquiescence in an informal settlement was presumed from lapse of time.

By the Article 2389 of the Code the defendant was bound to accept the community within thirty days from the separation finally pronounced, in default of which she would have been presumed to have renounced it. She appears to have signified to plaintiff her acceptance, and proposed to have an inventory made, and a regular settlement according to the forms of law. But the plaintiff disclaimed all interest in the slaves, and abandoned them to the defendant, in the words of the admission, "because she had raised the children." This verbal quit-claim was an informal settlement of the community, or *dation en paiement*, which will avail defendant, although not reduced to writing. The case of *McNeely* v. *McNeely*, 1 N. S. 646, is in point. See also the cases referred to in that case.

But if the strict rules of pleading prevent us from giving effect to this evidence, the same strictness of practice should apply to plaintiff; who has answered defendant's petition in reconvention by pleading *compensation* to the claims set up by her therein.

Compensation is a mode of extinguishing a debt, and takes place, by mere operation of law, where debts equally liquidated and demandable are reciprocally due. From this definition it follows, and is a long established rule of procedure, that the plea of compensation waives the general issue, and throws the *onus* upon the party who pleads it of proving that the indebtedness is extinguished. Hennen's Digest, 1193, No 3, 1209, No. 16, 1212, No. 12, 1228.

The party may qualify his plea by acknowledging only a part of his adversary's claim to be due, and setting up an offset against that portion. But this has not been done in the case at bar. The compensation is pleaded against the reconventional claims of defendant generally.

In this state of pleadings the defendant is entitled to judgment, for plaintiff has failed to show that the amount received by him from the successions of his father and grandfather (two thousand dollars) was ever put into the community as alleged, and allowing him all that he claims for the hire of the slaves, to the date of the filing of the supplemental petition, this would amount upon an accurate calculation to................................................ $5,071 00

Whilst the aggregate amount of the defendant's claims in reconvention to the same date is................................................ 13,413 00

The difference of these two sums is........................ $8,342 00
for one-half of which plaintiff would be the debtor of defendant, upon the supposition that the plea of compensation, without qualification, admits the correctness of defendant's claims, as I maintain.

But upon the contrary supposition, and considering all the reciprocal claims of the parties as open questions under the pleadings, there is a manifest error in the judgment of the District Court, in not allowing defendant to charge the community with the expense of supporting and educating the children of the marriage from the time of her abandonment by her husband (June, 1831,) to the institution of her suit for separation (July, 1837.)

The husband is obliged to furnish his wife with whatever is required for the conveniences of life, in proportion to his means and condition. C. C., 122.

Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children. C. C., 243.

From the obligations recognized by these Articles of the Code, results a right of action for alimony on the part of the wife and children who shall have been deserted by their husband and father. Alimony is defined in Article 346 of the Code to be what is necessary for the nourishment, lodging and support of the person who claims it. It includes the education, when the person to whom the alimony is due is a minor. Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who owe it. C. C., 247. In the present case alimony was not sued for, and consequently was not allowed by a judgment for the time of plaintiff's abandonment of his family, previous to the institution of the suit for separation of bed and board against him. But his obligation to support his wife and children did not the less exist, and there is no question of his having totally failed to fulfil that obligation during all that period, and that upon the wife devolved the whole charges of the support of the family and the education of the children. For one-half of a reasonable estimation of these charges, therefore, the plaintiff was debtor of the community at the time of its dissolution.

Pothier, Traité de la Communauté, No. 582, says: "Après la dissolution de la communauté on doit liquider les créances que chacun des conjoints a contre la communauté, et les dettes, dont chacun des conjoints est débiteur envers la communauté. Cette liquidation est nécessaire, en cas d'acceptation de la communauté par la femme ou ses héritiers, afin que chacun des conjoints puisse, au partage qui se fera des biens de la communauté la reprise de la somme dont il se sera trouvé créancier de la communauté, déduction faite de ce qui lui est dû par la communauté; et que, dans le cas où l'un ou l'autre des conjoints se serait trouvé débiteur de quelque somme envres la communauté, déduction faite de ce qui lui est dû par la communauté, cette somme dont il s'est trouvé redevable envers la communauté, lui soit, au partage, précomptée sur sa part."

And further, (No. 607): "On peut aussi établir, pour principe général, que chacun des conjoints est, lors de la dissolution de la communauté, créancier de tout ce dont il a enrichi la communauté à ses dépens, pendant qu'elle a duré."

Applying these principles to the case at bar, we find that, as already observed, the plaintiff was in possession of a good trade, the earnings of which belonged to the community; and secondly, that he had a capital of two thousand dollars, "biens propres," invested in mortgage security of the best kind in the parish of St. Charles. The rate of conventional interest allowed by law at that time was ten per cent., and it is notorious that this was the rate universally paid upon such investments. As no account has been rendered by plaintiff, the legal presumption is that such was the revenue received by him from his separate capital. But the fruits of all estates of which the husband has the administration belong to the community. C. C. 2371. "Les fruits des héritages et autres biens propres de chacun des conjoints, qui sont perçus, nés, et échus durant la communauté, sont la troisième espèce de choses qui composent la communauté légale." Pothier, Tr. de la Comm., No. 204.

It follows that the defendant has, in the words of Pothier, enriched the community at her expense, during six years of its duration, from 1831 to 1837, to the extent of the expenses defrayed by her, and which should have been de-

frayed out of the plaintiff's earnings as a mechanic, and the income of his sepa-
rate estate. Or rather, to bring these legal propositions into an appreciable
form, the wages of a journeyman carpenter in New Orleans have always been
two dollars and a half a day. Giving three hundred as the number of working
days in the year, plaintiff earned at his trade seven hundred and fifty dollars per
annum. Add two hundred for the interest of his separate estate invested in
mortgage notes, and we have nine hundred and fifty dollars per annum of com-
munity property received by plaintiff, out of which (upon the footing of the ali-
mony allowed by the court subsequently, pending the suit for separation, without
objection from plaintiff,) there would have been twenty-five dollars a month ex-
pended had plaintiff fulfilled his legal obligations towards his family. This
would make, for the six years of abandonment before suit instituted, a total of
eighteen hundred dollars, to which extent the community has been enriched at
the expense of the defendant; which is a legitimate claim against the plain-
tiff, and should be added to the allowances made by the District Court in settle-
ment of the community.

And this is not in the least inconsistent with the principle of the opinion of
the majority of the court, as developed in the following passage of that opinion :
" The defendant's claim for expenditures prior to the dissolution of the commu-
nity appears to us to be clearly inadmissible. It is neither alleged nor shown
that those expenditures were defrayed by the defendant with her separate or
paraphernal funds. C. C. 2371."

The doctrine here enunciated is, that defendant was bound to give her labor
and her income to the support of herself and family during the existence of
the community, because that labor and that income belonged to the community
by the terms of Article 2371 of the Code. But it is not said, nor do I think it
was intended to be said, that while the whole common property at the disposi-
tion of the wife, was liable for the common charges, the labor and income of the
husband, which were also common property, could be lawfully released from
contribution to the common charges.

I agree with Mr. Justice Voorhies, that the form in which the defendant has
stated her claim for the period of time during which the community existed, is
objectionable. But the error is entirely one of form. The fact is proved that
the community, that is to say, the portion of it in the hands of the husband, has
been enriched by the wife at her expense, pending the existence of the commu-
nity, and the only means afforded by the evidence of establishing a just balance,
is that adopted by me above, to wit: charging the husband with a contribution
equal to the alimony which was allowed by the judgment of separation, and
which contribution has been shown to have been reasonable, being less than one-
third of his income by the calculation made above.

In the settlement of this community, all the legal and equitable presumptions
are against plaintiff. The tie which bound these parties having been many years
severed by a dereliction of natural and legal obligations on the part of plaintiff,
for which he has offered no apology nor extenuation, he presents himself at this
late day, and holds the defendant to the strictest accountability, while he has with-
held all information of his own gains during the period of his desertion of his wife
and infant family. We are thus put in possession of the fact, that in the six years,
which elapsed between his marriage and his desertion of his family, the plaintiff,
although he had a family to support, was enabled to buy two slaves, for whom
he paid six hundred and fifty dollars cash. But in the six years which elapsed

between his desertion of his family and the institution of the suit by his wife for separation, although he had no family to support—at least, no legitimate family— it does not appear that he purchased any property whatever.

For these reasons, 1 am of opinion that there should be judgment against plaintiff and in favor of defendant, aud that defendant should be recognized as owner of the slaves *Anaïs* and her children.    ₣