## In re INDUSTRIAL HOMESTEAD ASS'N.
### No. 17294.

Court of Appeal of Louisiana. Orleans.

Nov. 18, 1940.

Rehearing Denied Dec. 16, 1940.

Writ of Certiorari Denied Feb. 3, 1941.

Gamble & Gamble, Louis H. Yarrut, and Charles J. Rivet, all of New Orleans, for appellant Liquidator.

Wm. Donnaud, of New Orleans, for appellee Chas. Kirsch.

JANVIER, Judge.

Charles Kirsch, in opposing a provisional account of the liquidator of the Industrial Homestead Association, claims that on the said account he should have been recognized as a creditor for $500. He alleges that he sustained damage in that amount because of the fact that, although the said Association had contracted with him for the sale to him of a certain piece of real estate in the City of New Orleans and though he was ready and willing to take title and to pay the agreed price, the liquidator sold and delivered the property to another person for $500 more than the price at which it had been agreed that it would be delivered to him.

There was judgment in his favor as prayed for and the liquidator has appealed.

Kirsch is a duly licensed and qualified real estate agent in New Orleans, conducting his business under the trade name,

"Charles Kirsch & Company". When the liquidator of the Homestead Association was appointed, he found in the possession of the Homestead certain real estate, including that involved here. In an effort to dispose of this piece of real estate, the Association had solicited the services of various real estate agents, including Kirsch. On January 9, 1937, Kirsch, through his representative, L. N. Goll, presented to the Association a written offer to purchase the said property for $6,500. At the bottom of the offer, in typewriting, appeared the words "Charles Kirsch & Co., Agents for Purchaser", and in ink, across the typewritten name above mentioned, was the signature "L. N. Goll", who, it is admitted, was a representative of Kirsch.

The offer contained a paragraph reading as follows:

"This offer remains binding and irrevocable through January 14, 1937."

It also contained a stipulation that, on acceptance of the offer, the prospective purchaser would deposit $650. The offer was presented to the Association through Emile Wagner, its secretary-treasurer. It was not accepted on or before January 14th, but was accepted in writing by Wagner, on behalf of the Association, under date of January 16, 1937. The acceptance stipulated that no commission should be paid by the Association to the real estate agents. No deposit was ever made.

It is the contention of Kirsch that, though the said offer purports to have been made on behalf of an undisclosed principal, it was, in fact, an offer of Kirsch himself, and that the officials of the Association knew this and that, therefore, when they sold the said property to another person for a higher price, they knew that they were depriving him of the opportunity of making a profit on the resale of the said property.

The liquidator presents several contentions, any one of which, it is argued by counsel, should defeat the claim of Kirsch:

(1) It is maintained that no contract ever came into existence for the reason that the offer, by its own terms, had expired when the written acceptance was executed.

(2) That, even if a contract ever came into existence, the stipulation that a deposit should be made was not complied with.

(3) That the offer to purchase, though purporting to have been made by Charles Kirsch & Company, as agents for an undisclosed purchaser, was not signed by Kirsch, but by L. N. Goll, and that there appears no written authority for Goll to represent Kirsch. It is contended that no offer binding upon Kirsch was ever made since, as counsel express it, "an agency to buy or sell immovables cannot be proved by parol".

(4) It is contended that Kirsch did not comply with his contract even if such a contract came into existence because, though the prospective purchaser—if Kirsch was that prospective purchaser—bound himself to apply to Industrial Homestead Association for the necessary loan, no such application was ever made.

(5) It is contended that, even if a contract came into existence and even if Kirsch's failure to comply with the above-mentioned stipulations did not abrogate that contract, still Kirsch cannot recover because he was employed by the Association to sell the property and therefore could not purchase it himself without fully disclosing the fact that he was acting for himself.

The fact that no deposit was made is fatal to Kirsch's claim. In State ex rel. Bond v. Register of Conveyances et al., 162 La. 362, 110 So. 559, 560, our Supreme Court, having found that the deposit stipulated for had not been made, said: "Until it was made, there was no contract between the parties, and relator was at liberty to withdraw from the incompleted transaction."

It is argued on behalf of Kirsch that, since he is a duly qualified, licensed and bonded real estate agent, it was not necessary that he make such a deposit since it would have been made by himself individually to himself as agent. Assuming, for the moment, that there was no impropriety in Kirsch,—if, in truth, he was acting for himself—in representing himself —this fact would not have relieved him of the necessity of making such a deposit as the contract required.

The principle which is involved cannot be distinguished from that considered in Tucker v. Rogers, 172 La. 445, 134 So. 388. There one real estate agent, desiring

to purchase for himself immovable property listed by the owner with another agent, made an offer which was accepted, and, in the offer, agreed to make the necessary deposit. It was agreed between the two agents that the purchaser would be entitled "to split the commission of $250." When the deposit was made, the prospective purchaser deducted from his deposit his half of the commission. The Supreme Court held that in doing so he had failed to comply with his obligation to make the necessary deposit and that, as a result, the other party was within his rights in withdrawing from the contract.

We are unable to see why a real estate agent, desiring to purchase for himself, should be permitted to deal with himself and fail to carry out the stipulation requiring a deposit. He, above all others, should recognize the necessity of complying in detail with an agreement to purchase real estate and should not be heard to say that, since he is in the real estate business, he need not make the deposit which every other purchaser must make. Even if the contract ever came into existence, when Kirsch failed to make the stipulated deposit he lost the right to insist on its enforcement.

We have been urged to rest our decision on the first contention made,—that is to say, on the ground that the acceptance came too late and that there can be no oral evidence to show that the offerer agreed that the acceptance might be executed after the expiration of the time set in the original offer.

■ We readily concede that it is well established that parol evidence is inadmissible to vary, contradict, or add to a written contract (Revised Civil Code, art. 2276), and that, though this rule does not, where any ordinary contract is concerned, prevent the introduction of parol testimony to prove a subsequent verbal agreement, it does prevent the introduction of such testimony if the contract is one which is required to be in writing. This has been recognized in many cases and is clearly stated in Conklin v. Caffall et ux., 189 La. 301, 179 So. 434, in Salley v. Louviere, 183 La. 92, 162 So. 811, and in Barchus v. Johnson, 151 La. 985, 92 So. 566, and, in failing to rest our decision on that ground, we do not intend to question the correctness of that rule.

But, when we analyze the facts here, we note that there is a possibility that a distinction may be found and we feel that, since there is no possibility that the case may be distinguished from those in which the Supreme Court has held that the failure to make a deposit as required by contract is fatal, we prefer to decide the case on that point.

In the first place, suggesting a possible distinction between this case and those three cases last cited, it should be noted that here it is the offeree which is attempting to point to its own delay in accepting the offer as destroying the validity of the contract. It is true that, if "A" offers to sell "B" certain property if "B" will accept by a stipulated time, "B's" tardy acceptance cannot bind "A". But, if "A", after his written offer has, by its terms, expired, verbally urges "B" to accept and "B" then accepts, it is not so clear that "B", after having so accepted, may claim that no contract has resulted, and, admitting the execution of his written acceptance of the contract, rely upon his own tardiness as nullifying what otherwise would have been a binding contract. It is proper that we concede that, in Barchus v. Johnson, supra, the Supreme Court did suggest that the rule would work both ways, but in that statement we think that we are correct in saying that there was an indulgence in obiter dictum.

■ Furthermore, it appears from the record here that, even if defendant might have invoked the parol evidence rule and, by it, might have excluded evidence showing that plaintiff had, in fact, acquiesced in or accepted defendant's tardy acceptance of the original offer, no such objection was made. In fact, Mr. Wagner, the secretary-treasurer of the Homestead Association testified that after the original offer had expired Mr. Goll, representing the original offerer, had called on him to ascertain whether the offer would be accepted and that he had then accepted the offer two days after its expiration. As we have said, we find in the record no objection whatever to this testimony which was offered by the secretary-treasurer of the Homestead itself.

■ We are familiar, also, with the fact that it has been said that the parol evidence rule "in matters of public acts, is not made merely for the safety of the contracting parties, but also for that of third persons, whose safety may be affected by such acts". Clark's Executors et al. v. Farrar, 3 Mart., O.S., 247, 255.

But we note that, under the settled jurisprudence of the state, there has been established the rule that "when no objection is made to parol when. offered to show title to realty, such objection will be considered as waived, and the proof will be accepted as sufficient to establish title thereto." Farris v. Miller, La.App., 159 So. 132, 133. As authority for this statement, the Court of Appeal for the First Circuit cited Babineau v. Cormier, 1 Mart., N.S., 456; Brent v. Ervin, 3 Mart., N.S., 303, 15 Am.Dec. 157; Fougard v. Tourregaud, 3 Mart., N.S., 464, 466; Strawbridge v. Warfield, 4 La. 20, 22; Huey v. Drinkgrave, 19 La. 482, 484; Kittridge v. Landry, 6 Rob. 477, 481, Frederick v. Brulard, 6 La.Ann. 382, 383; Dorvin v. Wiltz, 11 La.Ann. 514, 519, and Pauline v. Hubert, 14 La.Ann. 161, 162.

Long ago the question of whether or not the parol evidence rule which prohibits the establishment by parol of title to immovables could be waived was considered, and we find many interesting discussions in our early jurisprudence. We note that it now is well established that the parties may waive the rule and also, as we have said, that, if oral evidence is introduced, even though this evidence touches upon and establishes title to immovables, it is admissible evidence unless there is objection thereto.

In Brown v. Frantum, 6 La. 39, 46, appears the following: "But it is further objected that the interest shown to exist in Wells to the land, which enabled him to make it the object of a legacy, is proved only by parol evidence, that his contract was not reduced to writing, and that it was null and void. This court has repeatedly decided that a verbal agreement for land or slaves, even under the provisions of our code was not null and void. That the defect which such a contract presented, related solely to the proof, and if one of the parties acknowledged the agreement, or permitted parol evidence to be given of it without opposition, it was the duty of a court of justice to carry it into effect."

The question was again interestingly discussed in the matter of Lockett v. Toby, 10 La.Ann. 713, on rehearing. On page 716 of 10 La.Ann. appears the following:

"It is well known that under the laws of Spain, which governed Louisiana at the time of the cession, sales of real estate could be proved by parol, and whether or not they were reduced to writing, was a matter for the consideration of the parties, in which the public was supposed to have no interest.

"When, in the case of Babineau v. Cormier, the question first arose, under the old Code, whether testimony affecting the title to land which had been given in the District Court without any objection to its introduction, should be disregarded on the ground that it was illegal evidence, the court might, perhaps, by a strict adherence to the letter of the law, have adopted the principle of the law of France. But it was more logical to disregard the foreign interpretation, and to expound the law so as to make it harmonize with the settled jurisprudence of the country, as the French jurists had done. It was accordingly held, that parties have a right to acknowledge a parol contract for land, and to consent that their stipulations in regard to it may be proved by oral evidence.

"The same principle has been recognized under the new Code, in the case of Strawbridge v. Warfield, 4 La. [20] 22. In that case, the court says: 'The Judge of the court of the first instance considered the verbal sale of the slave was null; but we differ with him on this point. Under the provisions of our old Code, the jurisprudence of this court was well settled, that parties had a right to admit a parol contract for the sale of immovable property; and that if they chose they might, as they did in this instance, admit parol evidence to prove it. The late amendment to the Louisiana Code has not changed the old Code, except in recognizing the validity of a verbal sale, and in establishing by their authority the doctrine that the exclusion of parol testimony in relation to contracts of the description of that before us, is a privilege which the parties may waive'."

That opinion was written by Mr. Justice Rost. Mr. Justice Slidell concurred, saying: "After some hesitation, I yield my own doubts to the opinion of my brethren upon the question of practice involved in this case; * * *".

The rule was reaffirmed in Packwood v. White et al., 7 La.Ann. 31, in which the court said: "It is urged in the supplemental brief of the plaintiff's counsel, that the agreement alleged is a variation of the original contract of sale; that it should, as the sale itself, be in writing, and that no parol evidence of it ought to be re-

**532**

ceived. This question has been fully considered in the case of Lockett v. Mrs. Toby, 10 [La.] Ann. 713, on the application for a re-hearing, and after mature deliberation, we have adhered to the settled jurisprudence of the State, that the parties are at liberty to admit parol evidence of a contract for land, and that, if they do, we will give it effect."

These authorities seem to authorize the view that a valid contract is shown to have come into existence on January 16, 1937, when the acceptance was executed on behalf of the Homestead Association. But we have not found it necessary to reach that conclusion. All that we say is that there is, to say the least, extreme doubt as to the correctness of the contention of the liquidator on this point, whereas we have no doubt whatever of the soundness of his other contention that the failure to make the deposit effected an abrogation of such contract as may otherwise have existed. We, therefore, rest our decision on this much more firm foundation.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment dismissing the opposition of Charles Kirsch at his cost.

Reversed.

WESTERFIELD, J., concurs in the result.