REGAN, Judge.
Plaintiffs, Sterling E. Little and Raymond B. Hayes, both of whom are consulting geologists, instituted this suit against the defendant, Robert Haik, an attorney, endeavoring to obtain an accounting for expenses incurred and profits realized from a mineral lease brokerage business, which plaintiffs and defendant formed as a joint venture. Plaintiffs, in explanation thereof, asserted that the defendant had purchased certain mineral leases affecting property located in St. Martin and Iberia Parishes for the benefit of all the litigants, but that he subsequently sold them at a profit, and thereafter refused to render an accounting to his partners. In addition thereto, the plaintiffs requested that the defendant be ordered to convey a % interest in the mineral leases which the defendant possessed in his name when the suit was filed and which they insist is due them in conformity with the terms of their agreement.
The defendant pleaded the exceptions of want of interest and no cause of action which were overruled. Defendant then answered and denied entering into any agreement with the plaintiffs; however, he admitted acquiring the mineral leases in which plaintiffs- claim an interest.
Defendant has prosecuted this appeal from an adverse judgment which:
(1) Awarded plaintiff, Sterling Little, $1,627.75 as his share of the profit and for reimbursement of expenses incurred in the joint venture
(2) Awarded $1,388.13 to plaintiff, Raymond Hayes, as his share of the profit from the venture, and
(3) Ordered defendant to convey to each plaintiff an undivided one-third interest in the lease which defendant still owned.
Plaintiffs, as we have said, are consulting geologists, who developed an *509 interest in exploring for minerals in the East Lake Chico area located in Iberia and St. Martin Parishes. Between the years of 1956 and 1958 they engaged in extensive studies, compiled geological data and finally concluded that this area promised abundant mineral productivity. They encouraged several companies to drill for minerals in this field and kept abreast of the status of outstanding leases in the area.
In the fall of 1958, defendant, whose law office was accidently located next to an office occupied by Little, informed Little that he desired to acquire mineral leases on lands that would appreciate in value. Previously, Little and Hayes had agreed between themselves that any ventures in the East Lake Chico area would be entered jointly on a 50-50 basis since both had expended many hours conducting joint geological studies. Following Little’s conversation with Haik, he contacted Hayes to propose that the defendant be permitted to participate in a lease brokerage business in this area and also to obtain Hayes’ mandate to bind him to a joint venture with Little and Haik. Hayes agreed to both proposals.
Thus, Little, acting on his own behalf and as agent for Hayes, entered into an agreement with defendant whereby Haik would buy available mineral leases in the area, register them in his own name and endeavor to sell them at a profit. They agreed that each joint adventurer would pay one-third of the expenses incurred in purchasing the leases, share the profits realized from a re-sale equally or bear their proportionate share of the loss, if any resulted therefrom. In addition thereto, the defendant was to convey to his partners their proportionate interests in the leases he acquired. Plaintiffs’ contribution to the venture consisted of geological data compiled after extensive study, while the defendant, an attorney, performed the leg work required in contacting the landowners, checking titles and ultimately acquiring the leases.
In the early part of 1959, defendant was successful in obtaining leases from owners whose undivided interests were concentrated in the area. The defendant paid from his own funds for more than half of the leases thus acquired. In other instances, he issued drafts on the Hibernia National Bank in New Orleans which were paid by Little. The leases were prepared, in Little’s office, by his secretary, Lilly Giangrosso.
As time elapsed, Little periodically would request that the defendant render an accounting of this venture, and while he never refused, he successfully evaded causing an issue to be made thereof, which of course, finally provoked this litigation.
On September 1, 1959, the defendant assigned all the leases he had acquired to Herbert West for $5,000.00 and an overriding royalty interest of Yie. This was done without the plaintiffs’ knowledge thereof and the purchaser was unaware of their interest therein since the leases were registered in the defendant’s name.
When plaintiffs ultimately learned of the assignment to West, sometime in the month of January of 1960, they demanded that the defendant render an accounting, distribute the proceeds of the sale and assign to them their proportionate interest of the overriding royalty.
A dry hole was subsequently drilled on the acreage which the disputed leases covered, and they were reassigned by West to Haik in view of the fact that the original contract provided that West would be required to pay defendant a certain amount to compensate him for not receiving royalties in the event there was either no drilling or an unsuccessful effort.
When the trial hereof occurred, the defendant, therefore, held in his name, title to the mineral interest.
The foregoing facts were established by virtue of the testimony of both plaintiffs herein and Lilly Giangrosso, who was employed as Little’s secretary when the agree *510 ment was entered into and when the leases were actually prepared and the drafts in payment therefor were issued. At the time of the trial, Mrs. Giangrosso was then employed by Humble Oil Company; therefore, there exists no inference that she testified favorably in order to retain her position.
The defendant insists that plaintiffs conceived the idea of a joint venture only after he had realized a profit from the sale of these mineral leases; however, his version of his relationship with Little, only as a friend and not as a business associate, is not supported by the evidence. In addition to the more plausible testimony offered by the plaintiffs, and the corroboration thereof by an independent witness, all of the environmental characteristics of the case fully support the existence of an agreement to enter into a joint venture. The leases were prepared by Little’s secretary in his office. Little advanced lease bonus payments by covering defendant’s drafts, and the defendant, who was inexperienced in the oil business when he entered this venture, sought out leases in an area that plaintiffs as geologists considered promising.
Thus, we are convinced that the trial court very correctly reasoned that the parties did enter into a joint venture.
On the appeal hereof, both in brief and in oral argument the defendant continues to deny the existence of a joint venture agreement; however, in endeavoring to reverse the judgment of the lower court, he now relies, primarily, upon the contention that a joint venture could not have been entered into in view of the fact that the plaintiff, Hayes, did not discuss the agreement with the defendant and, therefore, did not assent thereto. Counsel has cited several cases which conclude that joint ventures are governed by the rules of partnership, and that all the partners or joint adventurers must assent to the formation of the business for a true partnership or joint venture to exist.
We have no doubt that the conclusions reached in these cases are well founded in law, but they have no application to the facts of this case. The distinguishing facts herein prove that Little was acting as Hayes’ agent and possessed his express mandate to enter into the agreement on Hayes’ behalf.
LSA-C.C. Art. 2992 provides:
“A power of attorney may be given, either by a public act or by a writing under private signature, even by letter.
“It may also be given verbally, but of this testimonial proof is admitted only conformably to the title: Of Conventional Obligations.”
Therefore, the defendant’s contention that Hayes did not personally consent to the venture is without merit, since he possessed the legal right to appoint an agent to act in his behalf.
In rendering monetary judgments in favor of the plaintiffs, the trial- court deducted from the $5,000.00 received by defendant his own expenses and ordered that those advanced by Little be reimbursed to him. The net profit to each was $1,388.13.
In addition, the trial court ordered the defendant to convey to each plaintiff an undivided one-third interest in the mineral lease registered in his name when this matter was tried. The rendition of such a judgment was correct since the defendant did not object to the introduction of parol testimony to establish plaintiffs’ interest in the mineral lease.[1]
The mineral interest ordered conveyed to the plaintiffs herein is described as follows:
“An oil, gas and mineral lease granted by Ellen Meche Businelle et al in *511 favor of Robert G. Haik under date of January 23, 1961, embracing and covering a certain tract of land situated in Iberia and St. Martin Parishes, being more particularly described as follows:
“The West Half (W/2) of the East Half (E/2) of Section 5, Township 12 South, Range 13 East, lying west of Hog Island Pass, containing 120 acres, more or less, which said lease is of record in the Conveyance Records of the Parish of Iberia in Book 385, Entry No. 118125.”
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. In Re: Industrial Homestead Association, La.App., 198 So. 528 (Certiorari Denied); White v. Lockhart, La.App., 129 So.2d 917 (Certiorari Denied) and cases cited therein.