No. 11,067.

RAYMOND B. SCUDDER VS. WILLIAM W. HOWE.

1. Parties, by mutual consent, can abrogate or modify legal agreements having the effect of law.
2. Realty donated originally, to which other values are substituted in good faith, and with the consent of all concerned, is not subject to an eventual right of reduction at the instance of the forced heirs.
3. Elementary principles depend in their applications upon a similitude of facts.
4. The circumstances of a particular case should never be applied to cases not strictly parallel.

A PPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

*Browne & Choate* for Plaintiff and Appellant.

*Jerome Meunier* and *S. S. Prentiss* for Defendant and Appellee.

The opinion of the court was delivered by

BREAUX, J. Plaintiff sues the defendant to compel him to accept the title he tenders to him of certain real estate.

He alleges that he acquired by purchase from Mrs. Florestile Boulemet, widow of Charles T. Howard, by authentic act on the 29th of August, 1889, and that his deed of purchase was duly registered.

He sets forth, in his petition, that he acquired under this purchase a legal and complete title from his vendor, Mrs. Howard, who was the owner holding a valid title.

He avers that he made, on the 21st of April, 1892, an agreement in writing under private signature, by which he agreed to sell to the defendant a portion of said property for the sum of $10,000.

He states that he has tendered to the defendant a full and perfect title of said property by authentic act containing all of the agreements and conditions embodied in the deed of sale, and that the defendant has declined to accept the same without assigning any valid reason.

He prays for a judgment condemning the defendant to accept the title and comply with the conditions contained in the agreement of sale.

The defendant in his answer admits the execution of the agreement of sales, but denies that the title of the property is good, clear and perfect.

He alleges:

That the property was donated by Mrs. Howard to the "Children's Home of the Protestant Episcopal Church" by authentic act, on the 24th of July, 1889.

That on the 29th of August, 1889, the Children's Home conveyed the property by authentic act to Mrs. Howard under a resolution adopted by its board of trustees.

That on the 29th of August, 1889, Mrs. Howard conveyed the proceeds of the last mentioned sale to the Children's Home by authentic act.

He concludes by averring that the title tendered him is, under the several acts and resolutions set forth, subject to the implied resolutory condition, that if at the death of Mrs. Howard the donation of July 24, 1889, shall prove to be in excess of the disposable portion of her estate as then ascertained, the said donation could then be resolved to the extent of said excess, and the forced heirs of the donor could revendicate the property in the manner provided by law, and he would be liable to eviction therefrom.

The facts are undisputed that the plaintiff agreed to sell the property to the defendant; that he tendered to the defendant an authentic act to the property, which he refused to accept.

That Mrs. Howard donated the property to the Children's Home as alleged.

That under a resolution of the Board of Trustees of the Children's Home, the title of the property was made out in the name of Mrs. Howard, who afterward sold it to plaintiff.

The resolution sets forth substantially that considering the want of authority in the corporation to make a perfect title to the property acquired by donation from Mrs. Howard, which is fully described; that it is useless to the corporation; that it is in need of funds; and further considering that the donor agreed to donate to it the proceeds of the sale of the property, " provided the said donation be revoked so as to enable her to make a title thereto.

" It is therefore resolved this corporation do, and it does hereby agree, revoke and rescind and consent to the revocation for and in consideration of the proceeds of the sale, which are to be donated to it by the said Mrs. Howard."

The treasurer, in the resolution following the above, was authorized to formally revoke by authentic act in the name of the corpo-

ration, and retrocede the property to Mrs. Howard. He was also authorized to accept the proceeds of the sale of the property.

In the act of revocation, drawn in the usual form, the appearers declare that they "revoke, cancel and annul the said donation."

In the clause following the parties declare "that the revocation and retrocession is made for and in consideration of the price of the sale of the property herein conveyed, which is to be made by Mrs. Howard as soon as possible, which proceeds she binds herself immediately to donate to the Children's Home, whether received in cash or notes, or part cash and notes, without any further obligation upon her part."

According to the resolution hereinbefore referred to, it appears that the parties hereto were induced to enter into this agreement and revoke the donation hereinbefore mentioned, because of the inability of the donee to sell and make a perfect title to the property herein described under the said donation; and inasmuch as the donee is in need of money to provide for the maintenance and the education of the orphans and destitute children committed to its care, this revocation and retrocession is made for the consideration hereinbefore mentioned.

It was after this deed had been signed that Mrs. Howard sold the property to the plaintiff.

On the same day she donated the proceeds of this sale to the Children's Home.

In this last act she declares that in order to carry out the obligation by her contracted this day in favor of the Children's Home, and in consideration of the revocation of the donation made by her to the corporation on the 24th July, 1889, she donates the cash and three notes, proceeds of the sale of said property, to the plaintiff.

It is proven that prior to the transfer of the property to Mrs. Howard it was offered to the plaintiff by the Children's Home, and that he declined to accept the title, as he was advised that the Home was without authority to sell the property.

Although it had value, the ownership of the property was of very little benefit to the institution.

It being advisable to sell it and not having the authority to sell, and the Home being in need of funds, they called on the donor to revoke the donation, to which she agreed.

70

The plaintiff is not shown to have been concerned with the agreement to revoke the donation, nor a party in any manner to the different acts to that end.

The record discloses that Mrs. Howard has, as alleged, three children and three grandchildren living; the latter are minors.

The property was hers prior to the donation; her title was complete and legal.

She had the absolute right to make the donation to the Children's Home.

*Permis à chacun d'abdiquer sa propriété.*

There is no question but that all the parties to the donations and transfers have acted in good faith.

There was no concealment, nor the least attempt to evade; the sons of Mrs. Howard were advised with and expressed their approval.

The agreement prior to the different acts and the acts themselves are conclusive of the intention.

The first question for determination relates to the legal effect of the act of 29th August, 1891, passed in compliance with the agreement to revoke the donation of the 24th July, 1889.

It remains for us to determine whether the intention of the parties is defeated by the fact that the resolution of the board of trustees and the act contains, in effect, the statement that the Home was to accept the donation of the price which Mrs. Howard promised to donate.

In support of the proposition that the property passed to Mrs. Howard, and through her to the plaintiff, with defects which will enable her forced heirs, if at her death the donation proves to be in excess of the disposable portion, to have it resolved to the extent of such excess, the defendant argues that irrevocability is of the essence of donation, and that the donor can not even with the consent of the donee revoke (in the legal sense of the word) the donation.

There are certain exceptions to the rule of the irrevocability of donation *inter vivos*, and when they do not arise the title is complete and legal, and the donor can not revoke the donation without the consent of the donee.

But the parties, donor and donee, have the authority to rescind or modify the donation by mutual consent.

The parties can abrogate or modify legal agreements having the effect of law.   C. C. 1945.

The text from Laurent, Vol. 12, p. 574, No. 491, to which our attention is invited, does not impress us as conclusive upon the subject.

Laurent differs from Demolombe as to the possibility of the donee divesting himself of the property donated by renouncing the donation.    The latter argues affirmatively; the former characterizes it as a false principle.

The text itself reads:

" Toutefois pour montrer où conduisent les faux principes, nous citerons la doctrine d'un auteur dont la réputation est grande.   M. Demolombe demande comment le donataire fera l'abandon des biens dans les cas où il peut renoncer á la libéralité?

" Le droit et le bon sens répondent que le donataire étant devenu propriétaire irrévocable, ne peut se dépouiller de cette propriété qu'en vertu d'un nouveau contrat, soit une donation, soit une vente. M. Demolombe rejette cette solution, parcequ'elle témoigne contre son système; il en résulte en effet que le donataire *ne peut renoncer, sans le consentement du donateur, ce qui renie la doctrine.*"   (The italics are ours.)

That the donee can renounce without the consent of the donor is the doctrine advocated by Demolombe and Fargole.   Laurent does not entirely concur with this view.

The act of August, 1889, is assailed as not being a revocation nor a donation, but it is contended that it was a trust or mandate.

The stipulations of the act were not intended to appo¹nt Mrs. Howard agent.

She was vested with the absolute ownership of the property.

Though the act sets forth her promise in reference to the price, it in no respect constitutes her an agent.

The "Children's Home" parted absolutely with its title from the date of the deed which its treasurer was authorized to sign.

The act of sale made by her to the plaintiff and the deed subsequent, donating the price does not contain any evidence of an intention to accept an agency, or to in any manner act as mandatory.

She is not a party as agent; but ın her individual right.

She warrants the title and in no respect represents the "Children's Home."

The deed of revocation contains separate stipulations—two acts, it may be said; the first, that relating to the revocation, stands alone and completely revokes the donation.

The second contains the stipulations as to the price which Mrs. Howard bound herself to donate.

In selling she exercised the right of owner under that portion of the deed which revoked the donation.

The obligation to donate the price of her own property did not constitute her an agent.

We are not particularly concerned in deciding this point; with donations and sales and with questions to establish that it can not be one or the other; questions that are argued by defendant's counsel.

The donation was revoked.

The effect of the onerous condition of the revocation must be determined and whether the lot originally donated is subject to the demand in *reduction de donation*.

That onerous conditions were imposed does not destroy the validity of the revocation.

The Children's Home renounced all rights; they abdicated all title as donees of the property in order that they might receive the price, which Mrs. Howard expressed herself willing to donate.

The donor substituted to the property originally donated the amount of $20,000, which she received as the price.

The forced heirs are and will always be without interest to assail the donation revoked.

It is no concern of theirs, in law, that their mother has revoked the donation.

It is the sum donated which has lessened the estate of the donor, and it alone can be subject to future rights.

As illustration, which must be brief, let us substitute the $20,000 to the land in the different deeds, and suppose as a result (the original donation having been revoked and the money returned) that instead of that amount, the Children's Home had become the owner of the land by donation of Mrs. Howard, after having revoked the donation of money, would the $20,000 be the amount donated?

It would serve no good purpose to burden realty with claims only because of its immovable character.

It possibly offers greater security.

"La propriété de tiers acquereurs ne doit pas être sacrifiée á l'intérêt, assez faible en effet, que les réservateurs peuvent avoir d'obtenir les biens en nature plutôt que leur valeur." Marcadé, de l'action ou réduction.

Our attention is directed to the Tessier vs. Roussel case, 41 An. p. 474.

We have given it consideration.

The principles laid down in that case are sound. They do not apply to the case at bar.

There was no attempt made to revoke the donation; it remained one of the deeds in the line of titles not revoked, but confirmed by subsequent proceedings.

We quote from the opinion:

" He claims that the effect of these dealings was to operate a conventional rescission of the donation by mutual consent of the donor and donee.

" We need not discuss what would be the effect of such a conventional rescission of a completely executed donation, because it is clear that none such has taken place in the instant case."

The question suggested as not an issue for decision in that case is presented in the case at bar.

Principles are binding as authority if there is a similitude of facts; they apply to a case parallel in its circumstances; if drawn from one case the most perfect similitude of facts ought to be shown.

The case referred to can not be considered as an authority without violating the rule with reference to precedent, which we have just expressed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is now adjudged and decreed that there be judgment in favor of plaintiff, condemning the defendant to comply with his agreement to purchase the property described in plaintiff's petition, and accept title thereto tendered him by the plaintiff, and accept the terms and conditions of his agreement.

The defendant and appellee to pay the costs of both courts.

CONCURRING OPINION.

FENNER, J. In Tessier's case, 41 An. 479, we expressly stated two questions which we left at large and undecided by that opinion, viz.:

1. Whether a conventional rescission of the donation by mutual consent of the donor and donee would relieve the property donated from the eventual claims of the forced heirs of the donor.

e  2. Whether the subsequent reacquisition of the property by onerous title and for a full consideration would have such effect.

The object of the remedy of reduction as a sanction for the rights of forced heirs is to prevent the diminution by gratuitous title of the donor's estate, and, to that end, to bring back into his estate property so donated, for the purpose of answering the claims of the forced heirs to the extent necessary.

The application of the above principle furnishes an answer to both the above questions.

When the donation has been conventionally rescinded, and the property donated has been restored to the donor in its integrity, the *status quo* is completely re-established, and the donor's estate stands undiminished, just as if no donation had ever been made. The forced heirs then have no ground of complaint, [because their eventual rights have been in no manner impaired.

On the other hand, when the donor reacquires the property by onerous title and for a fair consideration, this does not restore the *status quo* or repair the diminution which had been made of the donor's estate. On the contrary, while he has received back the property, he has, at the same time, parted with its value. The consideration passes to the donee, obviously free from any claim of the forced heirs, and if the property in the hands of the donor did not remain affected by their rights, the remedy which the law affords would be completely nullified. A man desirous of defeating the claims of his forced heirs could effectually do so by repeated donation and buying back of the same piece of property.

In this case, as I think properly, the court holds that the transactions between the Children's Home and Mrs. Howard evidence (1) a conventional rescission of the donation of the property, and (2) a new donation of $20,000.

When the first was accomplished, Mrs. Howard was reinvested with full ownership of the property and her estate stood undiminished precisely in the condition in which it was before any donation had been made. The rights of the forced heirs had not been, in any manner, impaired and they had no right, present or eventual, to complain.

When the subsequent donation of $20,000 was made, that, it is true, again diminished her estate, but that sum passed to the donee by gratuitous title, affected by the resolutory condition implied in all donations in favor of the forced heirs, and subject to their eventual rights.

The defendant has no concern with the particular motives which actuated the parties in these transactions. It is enough for him to find that the donation which had been made of the property had been validly rescinded, that Mrs. Howard had been reinvested with the ownership without the slightest prejudice to the rights of forced heirs, that she had the lawful right to sell the same and that the law gives the forced heirs no right to complain of such sale in any event.

So far as the subsequent donation of $20,000 is concerned it is, in form and substance, a donation, and the eventual rights of the forced heirs attach thereto and find therein the only protection which the law affords.

No one could contend that the rights of the forced heirs affect both the property and the $20,000 donated.

In the nature of things, they can affect but one; and it is so clear that they do attach to the $20,000 and that the Children's Home, under its acceptance of that donation, would be precluded from disputing it, that this powerfully confirms our conclusion that the property is free.

For these reasons, which obviously lie at the basis of the main opinion, and which I have merely expressed in different language, I concur in that opinion and in the decree.