*33 Statement.
MONROE, J.
This is an action for the recovery of “the double” of $3,000, alleged to have been given as “earnest.”
Plaintiff alleges that defendant agreed to sell him certain real estate (which is described); “that, in order to bind the purchase, petitioner * * * deposited with J. L. Onorato, agent for said J. Hussey, the sum of $3,000, which said agreement, evidenced in writing, is filed herewith and made part hereof, and marked Exhibit A; * * * that the deposit of $3,000 has been returned, but that defendant is indebted * * * in the further sum of $3,000, under the statutes, in this, that * * * J. Hussey has receded from his promise, has failed to carry out his said agreement, and has declined to deliver title and possession to petitioner.”
The Exhibit A, referred to, reads as follows:
“New Orleans, April 11, 1905.
“To J. L. Onorato, Real Estate Broker and Agent — Dear Sir: I make this offer of $30,-000 for the following property: * * * Terms: $9,000 cash; balance in 1, 2 and 3 years, with' interest at 6 per cent, per annum and all usual security clauses. The asphalt pavement to be assumed by present vendor. Act of sale to be passed before W. F. Brewer, Esq., notary public, at my expense and as soon as the acceptance of this offer is herewith authorized in writing. 1 will deposit $3,000 to bind my purchase. Seller pays 1 per cent, brokerage. Buyer pays 1 per cent, brokerage sale.
“[Signed] Jno. A. Smith.
“New Orleans, April 11, 1905.
“Acceptance of the above offer is herewith authorized.
“[Signed] J. Hussey.
“Witnesses:
“[Signed] Chas. Burkhardt.
“J. L. Onorato.
“Registered in conveyance office, book 201, folio 420, New Orleans, April 11, 1905.
“[Signed] L. V. Guillotte, Register.”
After exceptions of “vagueness” and “no cause of action,” defendant answered, admitting that he signed Exhibit A, but alleging that he understood it to mean that plaintiff offered to purchase his property for $30,000, and, if his offer should be accepted, to deposit $3,000 with J. L. Onorato, real estate broker and agent, as security that, if the title should be good, he would comply with his offer, but that he had no knowledge that any “earnest money” would be, or had been, paid, and that, if Exhibit A provides for such payment, he signed it in error. And he further alleges that no amount has been paid or has ever inured to his use; the sum of $3,000, referred to in the petition, having been deposited in the hands of J. L. Onorato, real estate broker and agent, as security, and not as earnest money.
The evidence shows that several months prior to April 11, 1905, defendant listed his property with Onorato and requested him to find a purchaser, at $30,000; that Onorato found the plaintiff, who made defendant’s acquaintance, and on April 10th called on and was shown the property by him; that, on the following day, plaintiff and defendant met, at Onorato’s office, where Exhibit A was drawn up by Onorato’s bookkeeper, who read and explained it to defendant, after which it was signed by the parties and witnesses; and" that, at that time, or within a very little while afterwards, plaintiff gave Onorato his cheek for $3,000, and took therefor a receipt, reading as follows, to wit:
“New Orleans, April 11, 1905.
“Received from Mr. Jno. A. Smith the sum of $3,000, on account of his purchase of property [describing it] * * * sold to him this day, at private sale, for the sum and price of $30,-000, as per proubs verbal before W. F. Brewer, Esq., notary public.
“For account of John Hussey.
“[Signed] J. L. Onorato, Agt.,
“Per Chas. Burkhardt.
“This receipt must be surrendered to the notary, as part of the purchase price, and must be indorsed.”
If defendant was not present when plaintiff gave his check for the $3,000 — as we are inclined to think was the case — he was informed of its receipt very shortly after-wards. He failed, > however, to execute the act of sale as contemplated, and, after some *35 delay, called on plaintiff, who gives the following, uncontradicted, testimony on the subject, to wit:
“ * * * He told me that he could not deliver the property to me, and then he told me of the Murphy privilege. I suggested to him — I told him that I had bought this property in good faith, which he didn’t deny, and said, ‘Just wait awhile, and we will see how the thing will turn out.’ I suggested to him to go to Mr. Parkerson’s office, which he did, with me, and there he practically stated, what he had stated to me, personally, before, that he could not deliver to me the property that he had sold to me.”
The story of the “Murphy privilege,” thus mentioned, is, briefly, as follows: In August, 1904, defendant had granted to N. Murphy and others an option to buy the property in question at any time between September 1, 1904, and August 31, 1906, and they were, about that time, demanding of defendant that he comply with his contract and make the sale at the price agreed on. He, however, declined to do so, and in June, 1905, they brought suit against him, and eventually obtained judgment, which was affirmed on appeal, decreeing them entitled to the property on payment of $30,000; it being developed in the course of the trial that they had, in the meanwhile, sold the same, subject to the result of the litigation, for $40,-000. . Murphy et al. v. Hussey, 117 La. 390, 41 South. 692. Following the interview above mentioned, to wit, on May 27, 1905, plaintiff read and delivered to defendant a communication reading as follows:
“Please advise me, at once, if it is your intention to deliver and convey title to me of the property * * * I bought from you on April 11th. I do not want the matter delayed any longer. I will thank you to give me your immediate decision.
“Yours truly.”
To this no written answer was made, and there appears to have been further delay, until April 15th, when Onorato caused a notary, public to serve on defendant a notice and demand, reading as follows:
“Dear Sir: On April 11, 1905, John A. Smith deposited with me $3,000, which is to bind the sale of certain property known as Nos. 1,509> and 1,511 Canal St., in this city. Mr. Smith informs me that you have receded from that agreement, and demands the return of the $3,000-This is to notify you that unless I hear from you to the contrary, on or before 12 o’clock-noon, August 21, 1905, I shall on that date return said amount of $3,000 to Mr. Smith. If you have any objections to make against the return of this deposit, please notify me before-the hour and date above given.
“Yours very truly [Signed] J. L. Onorato.”'
And defendant taking no action in the matter, the $3,000 referred to was returned to-plaintiff, who, thereupon (on September 12th) brought this suit for the recovery of “the-double,” and obtained a judgment, from which defendant has appealed.
Opinion.
The Civil Code provides that:
“Art. 2439. The contract of sale is an agreement by which one gives a thing for a price, in current money, and the other gives the price-in order to have the thing itself. Three circumstances concur to the perfection of the contract, to wit:' The thing sold, the price and the consent.
“Art. 2440. All sales of immovable property shall be made by authentic act, or under private signature.”
“Art. 2462. A promise to sell amounts to a sale when there exists a reciprocal consent of both parties as to the thing and the price thereof ; but, to have effect either between the contracting parties or with regard to other persons, the promise to sell must be vested with: the same formalities as are above prescribed, in articles 2439 and 2440, concerning sales, in all cases where the law directs that the sale shall be committed to writing.
“Art. 2463. But, if the promise to sell has been made with the giving of earnest, each of' the contracting parties is at liberty to recede from the promise, to wit: He who has given the earnest, by forfeiting it, and he who has received it, by returning the double.”
It is said that the contract here sued on is-a sale, and not a promise to sell, and that, as the giving and receiving of earnest contemplates the recession of either party, it-can have no present application, since from a sale there is no recession. It is evident, however, from the language of the contract in question, that it was intended as an agree- *37 meat for a purchase and sale thereafter to be effected, and not as the purchase and sale itself, and this is true, although it contains all the essential requisites of a sale, for the law has, in this instance, and for the purposes of the question here presented, thought proper to make a distinction between a sale and a contract which amounts to a sale, and to declare that, from such contract, though containing, and required to contain, all the essential requisites of a sale, the parties to recede may, if the contract has been made with the giving of earnest; “he who has given the earnest, by forfeiting it, and he who has received it, by returning the double.”
In a case recently decided, plaintiff sought to compel specific performance of a contract, reading:
“This is to certify that I have this day sold my house at No. 1904-6 St. Louis St., between Roman and Prieur, to Thomas Capo, for the sum of $2,300, 10 per cent., $230, paid, balance when act of sale is passed; 1905 taxes to be paid by vendor, also 2 per cent, to agent.”
But the Court held:
“The agreement was not a sale. It was not intended, in itself, to transfer the property. It remained in the defendant, who continued to have the real right in the property.”
And the defendant was condemned to return the “double” of the deposit. Capo v. Bugdahl, 117 La. 992, 42 South. 478.
The original idea of “earnest,” in the Roman Law, signified the conclusion of the contract, and it is that idea which obtains in the common-law jurisdictions and under the statutes of fraud of England (29 Car. II, c. 3, § 17) and of some of the states of this Union. But, in the Elgee Cotton Cases, 22 Wall. (U. S.) 195, 22 L. Ed. 863, the Supreme Court of the United States, citing Benjamin on Sales (2d Ed.) pp. 260, 262, said that the giving and receiving of earnest money, though evidence of a completed bargain, “is now considered of no importance, or of the smallest importance,” in ascertaining whether property has passed by virtue of such bargain; that question being determined by the nature of the bargain, concluded by the giving of the earnest. And in Howe v. Hayward, 108 Mass. 55, 11 Am. Rep. 306, the Supreme Court of Massachusetts said:
“The idea of earnest, in connection With contracts, was taken from the civil law. Guterbrock on Braeton (Am. Transí.) 145. It is not necessary to consider its precise effect under that law. As used in the statute of frauds, ‘earnest’ is regarded as part payment of price.” A. & E. Enc. of Law (2d Ed.) vol. 10, p. 396, note.
Under Justinian, however, the effect of the giving and receiving of “arrha” was to enable the eontractants to retain the privilege of withdrawing from the contract, on certain conditions (Institutes, III, 24), and the same effect is attributed to the giving and receiving of the equivalents “arrhes” and “.earnest,” by the codes of France and of Louisiana, respectively. It is argued that the word “earnest” is not used in the contract sued on» and hence that plaintiff presents no case, under the law on that subject. But the contract sued on, being a promise of sale, and: not a sale (for, otherwise, plaintiff would, have been entitled, upon its execution, to the-possession and revenues of the property),, the money advanced by plaintiff to bind it was earnest, under the law, whether the parties so designated it or not, and we- find no» disagreement, among the French writers, and no conflict, in our jurisprudence, on that point.
On the contrary (referring to authorities cited by counsel), Marcadé, after reproducing article 1590 of the Code Napoleon (corresponding with article 2463 of our Code), says:
“On entend ordinairement et en general, par arrhes, une somme d’argent qui, dans les contracts de ventes, ou de louage, est remise par l’une des parties (ordinairement l’acheteur or le locataire) comme garantie pour l’autre de l’éxécution de la convention.”
And he then proceeds to point out, not that the sum of money thus advanced as a guar *39 anty' of the execution of the contract is not “arrhes,” or “earnest,” but that it means, in the case of a promise to sell, that either of the parties may withdraw from the contract —the one by forfeiture, the other by irnying double — and, in case of a sale, that its meaning is to be determined by the judge, and with reference to the intention of the parties, as ascertained from the evidence and surrounding circumstances. MarcadS, vol. 6, p. 172.
Laurent is to the same effect, as to the use pf the word “arrhes,” in connection with the promise of sale, and he goes on to say that the giving and receiving of arrhes may, also, mean that a contract has been concluded and Is in course of execution. Laurent, vol. 24, i». 37. It is said that the case does not come •within the law invoked by plaintiff, because rthe money was not paid to defendant, but •was deposited in the hands of a third person; but that third person was the agent of the defendant, and gave a receipt in that •.capacity which bore upon its face the legend, -■“Per account of John Hussey.”
It is further said that defendant was not ..put in default. The defendant had, however, before entering into the contract sued on, .so obligated himself, with reference to the .property in question, that it was, from the .beginning (though not to the knowledge of .plaintiff), out of his power to comply with •it, and, when called on to comply, or, perihaps, before being called on, he voluntarily ¡informed plaintiff that he could not deliver •the property, and this admission is fully borne out by the record in the case of Murphy et al. v. Hussey, which both parties have offered in evidence, and the decree in which awards the property to Murphy et al. To the suggestion that he might have bought vthe properly back from Murphy, the answer is that Murphy had sold it to Pailet, and, if it is said that defendant might have reimbursed Pailet the $40,000 which he was to pay Murphy, and might, further, have paid him such profit as he might have demanded, in order that plaintiff might get the property, at $30,000, the further answer is that, as defendant did not own the property, the matter of his compliance with the contract with plaintiff was not within his control, and that it has been shown, without attempt at contradiction, that he told plaintiff that he was unable to comply.
“A contract may be violated actively, by doing something inconsistent with the obligation it has [imposed] proposed.” Civ. Code, art. 1931.
“When there is an active violation, * * * the creditor is under no obligation to put the debtor in default, in order to entitle him to his action.” Id. art. 1932.
In a suit for specific performance, or for damages for nonperformance, the acknowledged inability of the other party to comply with the contract dispenses with the necessity of putting him in mora. Lex neminem cogit ad vana. Hen. Dig. vol. 1, p. 21, No. 2, and authorities there cited.
The pledgees, who dispose of the pledged note by another pledge for a larger amount than their interest in it, need not be put in default to be held liable for the difference between the amount of the note and the amount due them. Laloire v. Wiltz & Co., 29 La. Ann. 329; Romero & Bayard v. Newman, 50 La. Ann. 89, 23 South. 493. See, also, Peck v. Bemiss, 10 La. Ann. 160; Abels v. Glover, 15 La. Ann. 247; Teutonia Nat. Bank v. Loeb & Co., 27 La. Ann. 110; Alter v. Shepard et al., 27 La. Ann. 210; Collins v. Demarest, 45 La. Ann. 108, 12 South. 121.
The judgment appealed from is, accordingly, affirmed.