For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., dissents.

**179 So. 434**

**CONKLIN v. CAFFALL et ux.**

**No. 34308.**

Feb. 7, 1938.

Rehearing Denied March 7, 1938.

John T. Hood, Jr., and Modisette & Adams, all of Jennings, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

O'NIELL, Chief Justice.

The plaintiff is appealing from a judgment rejecting his demand to have a certain instrument, purporting to be an option to buy the west half of a city block in Jennings, decreed to be a contract of antichresis, or pledge of the property to secure a debt. The instrument is annexed to and forms part of the plaintiff's petition—and is as follows:

"Feb. 3, 1933

"Contract and Agreement:

"By and between F. B. Caffall and Mary A. Caffall, parties of the first part, of Jennings, La., and Lulu M. Albright, of Des Moines, Iowa, herein represented by W. R. Conklin, of Jennings, La., party of the second part.

"It is mutually agreed by all parties hereto that, if at any time within three years from date hereof, if Lulu M. Albright or her representative reimburse Mary A. Caffall, or her representative, the full amount of money and retire any and all notes on which parties of first part are obligated in connection with this hereinafter described property, together with interest at 8% per annum, which shall include amounts for taxes and repairs on the property referred to herein, and especially the notes given to J. M. Henderson, signed by F. B. Caffall and W. R. Conklin.

"When the above has been complied with, parties of the first part shall, by warranty deed, transfer, sell and convey to Lulu M. Albright the west half of Block Eight of the McFarlain original plat of Jen-

nings, La., or to any legal representative of party of second part.

"If parties of the second part do not avail themselves of the privilege granted herein within the time limit herein given, then this agreement shall be void and of no effect.

"[Signed]   Mary A. Caffall
"[Signed]   F. B. Caffall
"[Signed]   Mrs. Lulu M. Albright
                per W. R. Conklin."

The reason why the suit was brought by Conklin, instead of being brought by Mrs. Albright, is that she, who is Conklin's sister, transferred to him all of her right, title and interest in what she called the "contract and agreement," a few weeks before the suit was filed.

The reason why Conklin prefers to have the court declare the contract an antichresis, instead of an option, is that he and Mrs. Albright failed to "avail themselves of the privilege granted herein within the time limit herein given"; that is to say, neither of them complied with the conditions stipulated in the contract, and neither of them gave written notice within the three years stipulated, of an intention to accept the offer. If the parties to the contract intended that it should be an antichresis, or pledge of the property, and not merely an option to buy it,—and if their writing expressed that intention,— the meaning is that Mrs. Caffall was not the owner, but merely the pledgee of the property, and did not become the owner by the failure of Mrs. Albright to comply

with the conditions stipulated, or by the failure of Conklin to comply therewith.

In article 3179 of the Revised Civil Code, referring to the contract of antichresis, it is declared:

"The creditor does not become owner of the pledged immovable by failure of payment at the stated time; any clause to the contrary is null, and in this case it is only lawful for him to sue his debtor before the court in order to obtain a sentence [judgment] against him, and to cause the objects which have been put in his hands in pledge to be seized and sold."

The property in question belonged originally to the wife of Conklin and was subject to a mortgage which she had given to Mrs. Mollie Hall. Mrs. Conklin died in 1926, and by her will she bequeathed the property to her husband. In 1930 he placed a second mortgage on the property to secure a debt which he owed to the Agricultural Credit Corporation, and the note representing this debt was transferred to the Calcasieu National Bank. The note was not paid at maturity, and the bank resorted to executory proceedings, and had the property seized and sold by the sheriff on November 19, 1932. Mrs. Hall bought the property at the sheriff's sale for the amount due to her, secured by the first mortgage. Thereafter, Conklin, with the hope of reacquiring the property, entered into an agreement with his business associate, Frank B. Caffall, in consequence of which Caffall's wife bought the property from Mrs. Hall on the 28th of January, 1933, for $2,825.54, which was the amount the property had cost Mrs. Hall,

including the interest on the loan she had made, and the attorneys' fees and costs of the foreclosure proceeding. The terms on which Mrs. Caffall bought the property from Mrs. Hall were $575.54 cash; and the balance, $2,250, represented by Mrs. Caffall's note secured by a vendor's lien and mortgage on the property. In order to make the cash payment, Caffall borrowed $500 from J. M. Henderson on a promissory note signed by Caffall and endorsed by Conklin. When the note matured, Caffall renewed the loan by giving a new note for the $500 without Conklin's endorsement. The instrument now in contest was written by Caffall. It was at Conklin's suggestion, and perhaps because he was indebted to Mrs. Albright, that she was made the party of the second part in the contract, instead of Conklin. Caffall and his wife took possession of the property immediately after she bought it from Mrs. Hall, and the Caffalls remained in possession continuously thereafter.

On or about the 29th day of January, 1936, that is, about five days before the date of expiration of the option dated February 3, 1933, Conklin called upon Caffall and asked for a statement of the indebtedness which would have to be paid in order for him to avail himself of the privilege granted under the agreement. Caffall furnished the statement on the same day that it was asked for. Conklin did not give a written notice of acceptance of the option, or have any further dealings with Caffall until the 17th of February, 1936, when Conklin left an unsigned deed at the office of J. H. Heinen, notary public, and re-

quested Mr. and Mrs. Caffall to call at the notary's office and sign the deed, conveying the property to him, Conklin. At the same time Conklin left his check with the notary public for $300, to be paid to the Caffalls on their signing the deed. Meanwhile, that is, on the 10th of February, 1936, Conklin paid to Heinen, who was the attorney for Mrs. Hall, $500 to be applied upon the mortgage note for $2,250 which Mrs. Caffall had given to her as part of the price of the property. This payment of $500 by Conklin to the attorney for Mrs. Hall was made without the knowledge of the Caffalls, and appears to have been made as a condition on which Mrs. Hall's attorney agreed to extend the payment of the balance due on the note of $2,250.

Caffall called at the office of the notary public and read the deed which Conklin had left there; but Caffall declined to sign the deed, stating to the notary that Conklin was not offering to comply with the conditions of the option dated February 3, 1933, in that the check for $300 was insufficient, and in that the deed which was tendered for Mrs. Caffall's signature did not release her from her obligation on the note of $2,250 which Mrs. Hall held, or release Mr. Caffall from his obligation on the note of $500 held by J. M. Henderson. Some time afterwards, perhaps in the latter part of March 1936, Conklin obtained the consent of Mrs. Hall to release Mrs. Caffall from her obligation to pay the balance of the mortgage note of $2,250 which Mrs. Caffall had given to Mrs. Hall in part payment for the property. On the 31st of March, 1936, Conklin served a written demand on Caffall and his wife to appear at the office of J. H. Heinen, notary public, on April 2, 1936, and sign a deed conveying the property to Conklin, and to produce the promissory note of $500 which Caffall had given to Henderson. Caffall immediately replied that he and Mrs. Caffall refused to sign the deed because the option dated the 3d of February, 1933, had expired and become void by the failure of Mrs. Albright and her transferee, Conklin, to avail themselves or either of them of the privilege therein granted within the time stipulated.

On the trial of the case Conklin offered to testify that the reason why he did not comply with the conditions of the instrument dated February 3, 1933, within the three years stipulated was that Caffall verbally consented to extend the time for complying with the conditions. This testimony was objected to on the ground, stated in article 2276 of the Revised Civil Code, that parol evidence is not admissible against or beyond what is contained in a written contract, nor as to what may have been said by the parties before or at the time of making the contract, or since. This rule of evidence does not forbid the proof of a subsequent verbal agreement, modifying or even abrogating a written contract, if the contract or agreement is one which is not required to be in writing. Salley v. Louviere, 183 La. 92, 162 So. 811. But a contract to transfer immovable property must be in writing. Rev.Civ. Code, art. 2275. And, according to article

2462 of the Revised Civil Code, as amended by Act No. 27 of 1920, p. 28, a promise or option to sell real estate is not valid unless given in writing. Hence an extension of the time stipulated in a written promise or option to buy or sell real estate must be in writing. And it has been decided that the acceptance of an option for the purchase of real estate must be made in writing and tendered to the proposer before the expiration of the time stipulated in the option. Barchus v. Johnson, 151 La. 985, 92 So. 566.

There is nothing in the circumstances in which this instrument was signed to warrant a belief that the parties intended that the instrument should be an antichresis, or pledge of the property, and not merely an option in favor of Mrs. Albright, or her agent, Conklin, to buy the property within three years, on the terms stipulated.

An essential element of the contract of antichresis is that it shall be given to secure a debt which the pledgor owes to the pledgee. In every article of the Revised Civil Code on this subject, articles 3176, 3177, 3178, 3179, and 3181, the pledgor is referred to as the debtor, and the pledgee as the creditor. It goes without saying that a pledgor must be the owner of the property. In this case Mrs. Caffall was the owner of the property. According to the plain and unambiguous terms of the instrument, Mrs. Albright, or her agent, Conklin, was not a debtor of Caffall or of his wife, there was no obligation on the part of Mrs. Albright or Conklin to pay Mr. or Mrs. Caffall anything, or to release them or either of them from any obligation in connection with the property which they proposed to sell to Mrs. Albright or to her agent, Conklin. · The attorneys for Conklin argue in their brief that the circumstances which were proven on the trial of the case show that there was a verbal obligation on the part of Mrs. Albright and her agent, Conklin, to pay to Mrs. Caffall what the property cost her and to relieve her and her husband of the obligations which they had assumed in relation to the property. The attorneys for the Caffalls objected to the attempt to prove a verbal obligation on the part of Mrs. Albright, or her agent, Conklin, in that respect. The objection was, first, that the written instrument itself showed plainly and unequivocally that there was no obligation on the part of Mrs. Albright or Conklin in that respect, and, second, that article 3176 of the Revised Civil Code requires that a contract of antichresis, in order to be valid, must be reduced to writing. As the relation of debtor and creditor, between the parties to the contract, is essential to a contract of antichresis, the evidence of that relation must be in writing. The judge, therefore, sustained the objection to the parol evidence, and allowed it to be taken down merely for the purpose of forming part of the bill of exception. The ruling was correct. In Maestri v. Board of Assessors, 110 La. 517, 522, 34 So. 658, 660, it was declared:

"Nor is the contract under consideration an antichresis, because, under article 3176 of the Code, it is necessary in this species of contract that there should be

a pre-existing debt, at the time the contract is entered into, for which the debtor surrenders the property to the creditor so that the latter may eventually pay himself the debt out of the use and fruits of the property surrendered to him."

It is not necessary in this case to go so far as to say that a pre-existing debt is essential to the contract of antichresis. It is sufficient to say that, as an antichresis is only an ancillary contract, it must have a debt or principal obligation to support it—whether the obligation be a pre-existing one or be incurred in the making of the antichresis.

The attorneys for the appellant cite several decisions to support their contention that the instrument in question was intended to be an antichresis; but, in every one of the cases in which the contract in question was declared to be an antichresis, the property was pledged to secure a debt which the pledgor owed to the pledgee. The cases cited are Livingston's Executrix v. Story, 11 Pet. 351, 9 L.Ed. 746; Smith's Executor v. Dwight, 10 La.Ann. 691; H. Ware & Son v. Morris, 23 La.Ann. 665; Payne v. Habbard, 42 La.Ann. 395, 7 So. 572; Moore v. Boagni, 111 La. 490, 35 So. 716, 722; and Fidelity & Deposit Co. of Maryland v. Johnston, 117 La. 880, 42 So. 357. In Livingston's Executrix v. Story, the contract that was declared to be an antichresis was made to secure a debt which Livingston owed to the pledgee, and it was stipulated in the contract that, if Livingston failed to pay the debt on or before the date stipulated, the property pledged should be sold at auc-

tion and that, after deduction of the amount due to the pledgee, with the expenses of the sale, etc., the residue should be paid to the pledgor, Livingston. By a subsequent agreement between the parties it was stipulated that, if the debt should not be paid on or before the date stipulated, the pledged lot and buildings should become the property of the pledgee. Livingston failed to pay the debt, and, after his death, the executrix sued to compel the pledgee, Story, to have the property sold at auction and to pay the residue of the proceeds to the succession of Livingston after deduction of the amount due to the pledgee, Story, with the expenses of the sale, etc. The court quoted article 3146 (now 3179) of the Revised Civil Code, and held that Story did not become the owner of the pledged property by the failure of Livingston to pay the debt within the time stipulated, because the clause dispensing with the necessity of selling the property at auction was null. The contract in that case conformed with all of the legal requirements for a valid antichresis, until the clause was added, dispensing with the necessity of a sale of the property at auction to satisfy the debt. That clause was null because it violated article 3179 (then 3146) of the Revised Civil Code. In H. Ware & Son v. Morris, a contract purporting to be a sale of a plantation to secure a debt was declared to be a pignorative contract, and not in reality a sale of the plantation. The contract is copied in the report of the case and supports the conclusion that it was not intended to be a sale. The decision is not at all applicable to the present case. In Payne v. Habbard the property was deliv-

ered by Habbard to Payne to secure a debt which Habbard acknowledged in the contract to be due to Payne. The contract was made in the form of a vente à reméré, and was declared to be a pignorative contract partaking of the character of an antichresis. In Moore v. Boagni the court did not call the contract an antichresis, but said: "We do not think it at all necessary that any particular name or designation should be assigned to the arrangement which the parties entered into—that we should declare whether it was an antichresis or not." The decision in Fidelity & Deposit Co. of Maryland v. Johnston had reference to a pledge of a promissory note secured by a mortgage. A promissory note, even though secured by a mortgage on real estate, is personal property. The decision is not at all applicable to this case.

It is said in the brief for Conklin that the account which the Caffalls rendered on the trial of the case, showing what the property had cost Mrs. Caffall, was different from the statement or account which Caffall rendered to Conklin on or about the 29th day of January, 1936—five days before the option expired. But we find that the two accounts are alike, except for the items that were added after the 29th day of January, 1936. The judge of the district court found the account to be correct, and the evidence supports his finding. Accordingly, the check for $300 which Conklin left with the notary public on the 17th day of February, 1936, to be paid to Mrs. Caffall, was far below the amount that the property had cost her up to the 3d day of February, 1936.

■ Our conclusion is that the instrument sued on, dated the 3d day of February, 1933, was nothing more than an option or a privilege given to Mrs. Albright and her representative, Conklin, to buy the property on the terms and within the time stipulated. They simply failed to avail themselves of the privilege within the time stipulated, and, according to the precise terms of the instrument, have no just cause to complain.

■ The plaintiff made an alternative demand for a judgment against the defendants for $500, with interest, as reimbursement for the $500 which the plaintiff paid to Mrs. Hall in part satisfaction of the mortgage note of $2,250, which Mrs. Caffall owed to Mrs. Hall. The defendants, therefore, in their answer to the suit tendered the $500 to the plaintiff, plus $8.33 interest to the date of the tender, and plus $19.25 costs that had accrued to that date. The judge gave judgment in favor of Conklin for the exact amount tendered, including the $8.33 interest, and the $19.25 costs. The appellees, in answer to Conklin's appeal, ask for an amendment of the judgment so as to limit the interest to the date on which they tendered the $500. The judgment in that respect is exactly in accord with the defendant's answer to the suit. Hence there is no occasion for an amendment in that respect.

■ The plaintiff, in his petition, claimed that the Caffalls had disposed of some bricks and other articles on the lot in question, and that they should account to the plaintiff for the value or price received. The judge in his judgment declared that the right was reserved to Conklin to bring such

action as might put at issue the ownership of any articles located on the premises at the time of the sale of the immovable property to Mrs. Hall. The appellees, in their answer to the appeal, ask for an amendment of the judgment so as to limit the right of the plaintiff to claim such articles only by virtue of some other title than the option dated February 3, 1933. From an examination of the pleadings, it appears that the plaintiff's claim to these movables, consisting of a lot of brick and a Delco light plant, is founded upon the contention that they were not a part of the real estate and hence were not conveyed by the sale by the sheriff to Mrs. Hall, or by the sale by her to Mrs. Caffall. At any rate, we see no reason why the judgment in this case should impose any limitation or restriction upon Conklin's right to sue for the bricks or the Delco plant, or for their value.

The judgment is affirmed.

HIGGINS, J., absent.

On Applications for Rehearing.

PER CURIAM.

The defendants, appellees, ask for a rehearing only on their complaint that the judge of the district court allowed the plaintiff interest on the $500 from February 10, 1936, until paid, instead of allowing the interest only to the date on which the defendants tendered the $500—April 23, 1936. The judge of the district court, in the judgment rendered originally, allowed the interest from February 10 to April 23, 1936, but afterwards granted a rehearing and rendered judgment allowing the interest from February 10, 1936 until paid—meaning until the $500 and accrued interest should be paid. The reason for this change in the judgment was that the judge found, on a reconsideration of the case, that the defendants had not left the amount tendered on deposit in the bank, but had withdrawn it. In that respect the judgment is correct.

The plaintiff, appellant, in his petition for a rehearing, makes two complaints: First, he says that the court should have given him a judgment for five or six hundred dollars for the value of certain movables alleged to have been sold by the defendants from the property in contest. The plaintiff did not pray, in his petition, for a judgment for the price or value of any such movable articles, but alleged merely that the defendants should account to him for the price or value of such articles in the rendering of a statement of the net amount necessary to reimburse them for the amount which the property had cost them at the time when this suit was filed. We disposed of that issue when we said that the judge of the district court had found the account which the defendants rendered to be correct, and that the evidence supported his finding. The second complaint of the plaintiff and appellant is that the tender of $500 which the defendants made, to reimburse the plaintiff for the amount paid to Mrs. Hall, was not a valid tender, because it was coupled with the condition that it should be in full payment and satisfaction of all demands set forth in the plaintiff's petition. The only effect that this tender could have was to save costs for the defendants. We find that, in passing upon the application for a new

trial or rehearing in this case, the judge of the district court granted a rehearing on the question relating to the costs. The record does not show how the question of costs was finally decided or whether it has ever been decided. The appeal which the plaintiff took was from the judgment on the other issues in the case.

With this explanation, both applications for a rehearing are denied.