**NOTO v. BLASCO.**

No. 2161.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1940.

Landry & Landry, of Baton Rouge, for appellant.

Odom & Prejean, of Baton Rouge, for appellee.

OTT, Judge.

On February 7, 1938, the plaintiff entered into a contract with the defendant, through the latter's agent, to purchase three lots of ground in the subdivision known as the Wilson Place, in East Baton Rouge Parish, for the total consideration of $1,700. On that day, the plaintiff gave his check to defendant's agent for $50, made payable to the said agent, on which check was the notation "For part payment on Santo Blasco Lots (3) 120x120—facing N. Blvd. Cor. Gebelin St. Bal. $1650.00."

While the defendant denies in his answer that he accepted the said check, yet in view of the fact that he admits that the agent was authorized to sell the lots for him and further admits that the check was accepted by his agent, the check may be considered as given the owner under a contract to purchase the lots. In fact, the defendant admits in his answer Article 2 of the petition which alleges that plaintiff entered into a contract with the defendant, through this agent, for the purchase of these lots for a consideration of $1,700.

Plaintiff alleges that some four days after the above contract was entered into, the defendant requested a release from the contract to sell these lots, giving as a reason therefor that he was induced to sell the lots on account of financial difficulties; that after he entered into the contract, his wife strongly objected to his selling the lots; that he and his wife decided that they wanted to keep the lots and build a duplex house on the lots for rent, and that they had no intention of selling these lots to anyone else. The plaintiff then alleges that because of these earnest requests and solicitations on the part of the defendant he agreed to and did release the defendant from his contract to sell the lots, whereupon the check for $50 was returned to plaintiff.

Plaintiff further alleges that he was induced to grant the said release on account of fraudulent misrepresentations on the part of said defendant for the reason that the defendant did not desire the said lots released in order that he might keep them and build a duplex house on them for rent, but in order that he might sell them to another person for a greater price; that as a matter of fact, only a few days after said release was granted, the defendant did sell the lots to one Tuminello for a consideration of $2,000, the purported consideration in the deed, however, being fixed at $1,500.

The prayer of the petition is for $300 damages (the difference in the price for which plaintiff agreed to purchase the lots and the price for which they were sold by defendant to this third party). In the alternative, in case the court should hold that the contract was not a sale but only a promise of sale with the giving of earnest money, that he recover $50 as earnest money.

The defendant admits that he requested and obtained a release from the contract for the reason that his wife objected to the sale and because he and his wife had planned to build a duplex house for rent on the lots. He denies that he made any false representations in obtaining said release and denies that at the time he obtained the release he intended to sell the lots to a third person. He admits that he sold the lots to Tuminello, but alleges that after he obtained the release, he changed his mind about building on the lots, and sold the lots to Tuminello after the release was obtained and after he decided not to build on the property.

A judgment was rendered in favor of the defendant, rejecting plaintiff's demands, and he has appealed.

It is obvious that unless the plaintiff is able to set aside the release which he gave the defendant and thus restore the

contract to its same condition as before the release was given, the plaintiff has no standing in court either to claim damages for the breach of that contract or to recover earnest money.

While all of these grounds are not set up in the petition to annul and cancel the release, the plaintiff relies on three principal grounds for obtaining this purpose: First, on the ground that the release was invalid because it was not in writing; second, because there was no consideration for the release; and, third, on account of the fraud and misrepresentation practiced in obtaining the release.

On the first ground, little need be said. It is doubtful if a binding and legal written agreement for the sale of land can be abrogated, changed or extended by a verbal agreement. Conklin v. Caffall et ux., 189 La. 301, 179 So. 434. However, in this case, not only has the plaintiff failed to allege this as a ground for the nullity of the release and failed to make any objection to proving the release by parol evidence, but he has alleged and himself proven a release by parol.

On the second point, the decided weight of authority is to the effect that an unexecuted commutative contract may be abrogated by the parties bound without a new consideration, the release of each of the parties bound from his obligation to execute the contract being a sufficient consideration for the release. Civil Code, Art. 2199; Mouton v. Noble et al., 1 La.Ann. 192; 12 Am.Jur. p. 988, par. 409.

While contracts legally entered into have the force and effect of law between the parties thereto, these contracts may be abrogated or revoked by the mutual consent of the parties. C. C. arts. 1901, 1945 and 2130; Scudder v. Howe, 44 La.Ann. 1103, 11 So. 824.

A release or discharge from an obligation is itself a contract, and it follows that if such a release or discharge was procured through fraud, error or mistake, it can be set aside the same as any other contract may be annulled for these causes. C.C. arts. 1832 and 1847; Reed v. Holderith, 3 La.App. 379; Brandon et al. v. Gottlieb et al., 16 La.App. 676, 679, 132 So. 283; Winzey v. Louisiana Ind. Life Ins. Co., La.App., 195 So. 67.

We come now to consider the question whether or not there was sufficient fraud in the procurement of the release to justify its annullment and the consequent restoration of the contract of sale. We believe that the evidence given by the defendant himself and that given by the party to whom he sold the property after obtaining the release, coupled with the circumstances attending the obtention of the release, fully justifies setting aside the release for fraud and the misrepresentation and suppression of material facts.

The defendant testified that when he asked for and obtained this release he had no intention of selling the property to anyone, but intended to keep it and build a house on it to rent; that immediately after obtaining the release, he endeavored to make arrangements to get the money to build on the lots but found out that he would have to mortgage his own home, and changed his mind about building on the lots; that five days after he had secured the release, by chance he was talking to Tuminello about the purchase of a snowball machine when the latter mentioned the fact that he had heard of defendant's sale of the lots to Dr. Noto; that he (the defendant) then advised Tuminello that the lots had been released, whereupon Tuminello (who had negotiated with defendant for the purchase of the lots a year or so previously but could not then agree on a price) offered $1,500 for the lots and the sale was passed that day. The defendant denied that he had made any agreement with Tuminello for the sale of the lots before he got the release, and persisted in testifying that the consideration of the sale was only $1,500 until his attorney practically made him admit that Tuminello actually paid him $1,850 for the lots.

Coming now to the testimony of Tuminello, we find him first testifying that he paid only $1,500 for the lots until he was confronted with an admission by defendant that the actual consideration was $1,850, when he changed his testimony and said: "It is the truth. No use to dodge anything." And he further testified that defendant had spoken to him about the sale of the lots a week or so before the sale was consummated, indicating to us clearly that the sale to Tuminello for a greater consideration had been discussed (if not actually agreed upon) at the very time that the defendant secured the release from plaintiff under his protestations that he did not intend to sell the lots to any other person. We cannot escape the conclusion that defendant misrepresented and sup-

pressed existing facts in obtaining the release. We are convinced that his purpose in misleading the plaintiff as to his negotiations with Tuminello was to secure the release so that he might sell the lots for a better price.

It is significant that the defendant at no time re-offered this property to the plaintiff from the time he secured the release from him until he sold it to Tuminello only five days later. During this time he knew that plaintiff was interested in buying the lots for $1,700, but he was obviously more interested in selling them to Tuminello for a profit of $150.

■ We think the first paragraph of Article 1847 of the Civil Code answers the question of whether or not the fraud practiced by the defendant was such legal fraud as to justify setting aside the release. Certainly, as stated in that article, the misrepresentations and suppressions of fact by the defendant were the cause of error bearing on a material fact, created or continued by artifice, with a design to obtain an unjust advantage over plaintiff by causing him to release a valuable right; i. e., to surrender an opportunity to make $150 profit on the property. It is reasonable to assume that the plaintiff would not have released his rights on this property had he been informed by the defendant that the latter was about to sell the property for $150 more than plaintiff had agreed to pay for it. We therefore conclude that the release is without effect.

The only remaining question is whether or not the plaintiff is entitled to recover the $150 as the measure of his damage for the breach of the contract, or whether the plaintiff is restricted to a recovery of $50 as earnest money under Article 2463 of the Civil Code.

■ An agreement for the sale of real estate, which contemplates the passing of the property not immediately and by virtue of the agreement, but by an act to be executed at a later date, and which contains all the elements of a sale, such as the price, the property and the consent of the parties, is merely a promise of sale, unless the intention of the parties clearly indicates that the agreement itself is to constitute a completed sale.

■ As there was no completed sale, and as the parties contemplated the completion of the sale in the future by the execution of a deed transferring the ownership, the contract in this case, according to the following cases, must be construed as a contract or promise of sale and not a completed sale, and the amount deposited must be considered as earnest money, and the purchaser limited to the recovery of the earnest money. Capo v. Bugdahl, 117 La. 992, 42 So. 478; Smith v. Hussey, 119 La. 32, 43 So. 902; Legier v. Braughn, 123 La. 463, 49 So. 22; Maloney v. Aschaffenburg et al., 143 La. 509, 78 So. 761; Terrebonne v. Cheramie, 151 La. 929, 92 So. 388; Livingston v. Southport Mill, Ltd., 173 La. 120, 136 So. 289; C.C. arts. 2462 and 2463.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed; and it is now ordered that there be judgment in favor of the plaintiff and against the defendant for the sum of fifty dollars, with legal interest thereon from judicial demand until paid, and for all cost in both courts.