McCALEB, Justice.
Charles P. Quirk, the liquidator of Tropical Sugars, Inc., a domestic corporation-domiciled in Lake Charles, brought this suit to recover the purchase price ($18,097.-38) of 3339 cases of sugar cane syrup sold on or about May 28th 1947, by Tropical Sugars to Raymond Heard, Inc. a wholesale grocery domiciled at Ruston, and delivered to defendant in two carload lots, one at its warehouse in Ruston and the other at Natchez, Mississippi.
Defendant denies any liability in the premises, specially pleading that the syrup, which was purchased through J. S. Brown & Son, a brokerage firm of New Iberia and the authorized agent of Tropical Sugars, was represented and warranted to be of good quality, fit for human consumption and for resale to the retail trade; that, when the shipments arrived at its. places of business at Ruston and Natchez, it was discovered, upon immediate inspection, that the syrup was of poor quality, unpalatable and unfit for the purposes for-which it was purchased; that, upon being-informed of these facts, the brokerage-firm of J. S. Brown & Son assented to the-cancellation of the purchase order, it being understood that defendant would, as an accommodation and without obligation on its, *49 part, unload the syrup and sell it for the account of Tropical Sugars. Further, defendant pleaded that the commercial co-partnership J. S. Brown & Son, and its individual members be called in warranty, alternatively alleging that, in the event of judgment in favor of plaintiff, then it should have a like judgment against the partnership and the individual members thereof, in solido.
After a trial on the foregoing issues, the judge, being of the opinion that there was a breach of warranty respecting the quality ■of the syrup sold, found for the defendant and dismissed the suit. He, however, reserved to the parties the right to proceed for an accounting with respect to the .amount of merchandise disposed of and then on hand and also for the expense incidental thereto such as freight, storage and insurance. Plaintiff has appealed.
While much evidence was submitted at the trial by the litigants to substantiate their respective contentions, the transcript discloses that few of the -basic facts are in ■controversy and, in those instances in which .a dispute exists, we are satisfied that defendant’s position is supported by the preponderating proof. We therefore find the facts to be as follows:
Defendant operates a wholesale grocery business in North Louisiana, having its principal establishment in Ruston and a branch office in Natchez, Mississippi. In the usual- course of its dealings, defendant .sells and has sold great quantities of syrup to the retail trade for resale to the consuming public. During 1946 and 1947, a large part of the syrup purchased by defendant was secured through J. S. Brown & Son, sugar brokers of New Iberia, who, by reason of its previous dealings with defendant, was well acquainted with the quality of syrup required for its retail trade. During the month of May 1947, defendant’s president, Mr. Raymond Heard, was contacted by Mr. J. S. Brown, Jr., one of the partners of J. S. Brown & Son, and was advised by him that he had some fine syrup which he stated to be, according to Heard, “ * * * best in South Louisiana and equal to what I had been getting from Delcambre Syrup Company which had been the very best * * * ”. On this representation, Heard told Brown “to ship me any amount he could * * * Accordingly, Brown secured 3339 cases of sugar cane syrup from Tropical Sugars and shipped them in separate carload lots to defendant at Ruston and Natchez. These shipments, which were made on June 3rd 1947, were consigned by Tropical Sugars to itself. However, the bills of lading contained memoranda to notify Raymond Heard, Inc. and, attached thereto were sight drafts drawn on Raymond Heard, Inc. through the Ruston State Bank & Trust Company, payable to J. S. Brown & Son. The reason why the drafts were made payable to Brown & Son was because Tropical Sugars was indebted to the brokerage firm for commissions amounting to a large sum on transactions previously handled.
*51 Upon arrival of the cars of syrup at their respective destinations (about June 5th 1947), Mr. E. D. Swilley, Assistant Manager of defendant in charge of wholesale buying, had the car which had come to Ruston opened so that its contents could be inspected.[1] Upon examination of the contents of several cases, Mr. Swilley says that he found the syrup far below the quality represented; that it was unpalatable and unfit for resale. He thereupon returned to his office, telephoned Mr. J. S. Brown Jr. at New Iberia and told him that, due to the unsound quality of the product, defendant could not accept the shipment. Soon after this telephone conversation with Brown, Swilley was advised that the sight draft attached to the bill of lading covering the shipment to Natchez had been accepted and paid at the request of defendant’s Natchez office.[2] Following receipt of this information, he discussed the matter with Mr. Heard and, upon the latter’s instructions, contacted Brown again via long distance telephone, explained the situation to him and requested that Brown make arrangements for the release of the money paid for the Natchez shipment. After some discussion, it was agreed between Brown and Swilley that the former would immediately secure the authority of Mr. J. E. Caldwell, then President of Tropical Sugars, to release the money paid by-defendant on its acceptance of the sight draft covering the Natchez shipment and' also to deliver the bills of lading to defendant. In consideration of this, Swilley agreed that defendant would unload both, shipments, storing them at its warehouses, in Ruston and Natchez, and undertake the-sale of the syrup for the account of Tropical Sugars and/or Brown until such time-as Brown could find a purchaser for sucln portion of the syrup not disposed of by it.. Pursuant to this understanding, the Peoples-National Bank of New Iberia wired, at: Brown’s request, First National Bank of' Ruston to return ’ defendant’s money and! deliver to it the bills of lading. Upon re-; ceipt of the bills of lading, defendant removed the shipments to its warehouses and' made efforts to dispose of the syrup for account of Tropical Sugars. However, its-endeavors were unsuccessful for practically all of the retailers purchasing the syrup returned it to defendant as unmerchantable,, *53 ■explaining that it was not palatable to their ■customers. With affairs in this state, defendant wrote J. S. Brown & Son and 'Tropical Sugars requesting that shipping instructions be given it — as the syrup was not saleable and that it was no longer willing to keep it in its warehouses. These demands were not heeded or even answered 'by Tropical Sugars or Brown & Son and, .about a year and a half later, on March .2nd 1949, plaintiff filed this suit.
It is apparent, from the foregoing statement of the case, which is fully supported 'by the believable evidence, that plaintiff’s :suit must fail. In the first place, it is singular that plaintiff, notwithstanding that the original contract for the purchase of ■the syrup had been cancelled, brought suit for the price without even mentioning this ¡salient fact. Undoubtedly, plaintiff was fully aware of the rescission by mutual ■consent; even his witness, Brown, unhesitatingly admits it in his testimony. In •speaking of his understanding with Swilley, ■under which defendant agreed to dispose •of the syrup for the account of Tropical .Sugars and/or J. S. Brown & Sons, Brown •stated “If he didn’t sell it, he was under •no obligation”. Albeit, aside from their pleadings, it does not appear that either •plaintiff or Brown have seriously contended that there was not a mutual agreement to cancel the sale.
Accordingly, since contracts may !be revoked by the mutual consent of the parties, LSA-Civil Code Articles 1901 and 1945, it would naturally follow that plaintiff’s suit, which is founded on a rescinded contract, would fall. However, plaintiff, despite his failure to plead the facts, maintains on this appeeal that the cancellation of the sale was ineffective for two reasons —(1) because, inasmuch as Brown & Son was merely the broker for the sale of the syrup, it was without authority to modify or cancel the sale agreement and (2) because, in any event, Brown’s consent to rescind was obtained by the misrepresentation of Swilley that the cans of syrup were exploding in the freight car.
 As to plaintiff’s first proposition it is, of course, elementary that an agent has no power to abrogate or modify a pontract without the knowledge and -consent of his principal. But, here, it cannot be gainsaid that Tropical Sugars was not only fully advised of Brown’s agreement to cancel the‘purchase order and made no objection thereto but the evidence is clear that it specifically ratified his action by consenting that he authorized the bank at Ruston to release defendant’s payment in acceptance of the sight draft.
Plaintiff’s other contention, that Brown agreed to cancel the purchase order on the misrepresentation of Swilley that the syrup was exploding in the freight car, is not sustained by the preponderating proof. Swilley’s testimony is positive and clear respecting his conversations and *55 agreement with Brown and he is fully supported by subsequent correspondence of the parties. He at no time contended that the syrup was exploding; he says that the shipment was rejected because the syrup was not of the quality represented by Brown, being unwholesome, unpalatable and not fit for resale to the retail trade. Brown does not deny in his testimony that Swilley voiced these complaints as grounds for defendant’s refusal to accept the shipments. However, since he adds that Swilley also told him that the syrup was “blowing up’’ in the car, plaintiff’s counsel seize upon this statement as the misrepresented fact upon which they hinge their argument that the agreement rescinding the purchase order is invalid. But, as we have said, the testimony of Brown that he was informed that the syrup was exploding is not only denied by Swilley but is otherwise wholly unsupported. Indeed, the evidence leaves no doubt that the contract was cancelled because the syrup was not of the quality represented by Brown and that the latter knew that to -be the motivating cause at the time he agreed to the rescission. In view of this, there would ordinarily be no need for further consideration of the case as the rescission of the contract by'mutual consent ended the matter in absence of misrepresentation or fraud. Noto v. Blasco, La.App., 198 So. 429. However, as counsel for plaintiff seemingly argue that Swilley’s statement (that the syrup was not of the quality warranted by Brown) was a misrepresentation of the true facts, disposition of that contention is in order.
On this point, counsel maintain that it: was not enough that the syrup was unpalatable or unsaleable; that, as long as. it was not adulterated or unfit for human consumption, the rescission of the contract was unjustified and that, therefore, the-statement of Swilley that the syrup was not of good quality constituted a misrepresentation.
We do not subscribe to this view. Whereas, in the absence of any warranty,, palatability of an edible product may not invariably be considered as a valid ground' for rescission of its purchase, McNeill & Higgins Co. v. Martin, 160 La. 443, 107 So.. 299, such a result would be utterly inappropriate here, where it is shown that the-goods have been represented to be of such a quality as to be fit for resale and ultimate-consumption by the public as a palatable-food product. LSA-Civil Code Article 2520. That the syrup in this case was below the standard contracted for by defendant we have no doubt, the evidence overwhelmingly exhibiting that it had a bad', taste and that attempts to resell it to consumers for table use were of no avail.
Finally, plaintiff has suggested that defendant was attempting to withdraw from the contract because it had ascertained that the government was going to end sugar rationing and that the order releasing unlimited sales of sugar went into effect some *57 six weeks after the delivery of the syrup. This proposition finds no substantial support in the evidence.
The judgment appealed from is affirmed.

. Tliis inspection was conducted by virtue of an agreement between the railroad and defendant, whereby the latter, upon posting a bond to cover possible liability of the railroad, was permitted to examine shipments made to it without first paying the bill of lading.

. It appears that this request to pay-was made by the Natchez office without previous inspection of the contents of' the shipment. As that office did not: have an agreement with the railroad similar to that existing at Ruston, the sight-draft had to first be paid in order- to-secure the bill of lading and receive- delivery of the goods.